UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: | Bkr. Case No. 25-40976-357 |
| 23andMe Holding Co., *et al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |
| THE PEOPLE OF THE STATE OF CALIFORNIA, | |
| *Appellant* | |
| vs. | Case No.: 4:25-cv-0099 |
| 23ANDME HOLDING CO., *et al.*, | |
| *Appellees* | |

**The People of the State of California's Emergency Motion for a Stay Pending Appeal**

## Table of Contents

I.     Introduction .........................................................................................1

II.    Factual and Procedural Background ....................................2

III.   Legal Standards .........................................................................5

IV.   Argument ...................................................................................6

          A.      The People are likely to prevail on the merits of the appeal. ...................................................................................6

                1.     The Bankruptcy Court misapplied California law. ..........6

                2.     The multi-step transaction, facilitated by the creation of a non-debtor entity, is an improper use of § 363. .......................................................................12

                3.     Neither TTAM nor NewCo is entitled to good-faith purchaser protection under § 363(m). ....................15

          B.      Irreparable injury if the stay is denied. ......................................17

          C.      Weighing the public interest and assessing harm to Debtor. ......................................................................................18

          D.      An appellate bond would be unnecessary and inappropriate. ............................................................................20

V.     Conclusion..................................................................................22

# Table of Authorities

**CASES**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*
    458 U.S. 592 (1982)............................................................................17

*BBBB Bonding Corp. v. Caldwell*
    73 Cal. App. 5th 349 (2021) ...................................................................8

*Brady v. Nat'l Football League*
    640 F.3d 785 (8th Cir. 2011) ...............................................................5, 6

*Cigna Corp. v. Bricker*
    103 F.4th 1336 (8th Cir. 2024) ...........................................................17

*City & County of San Francisco v. PG&E Corp.*
    433 F.3d 1115 (9th Cir. 2006) .............................................................18

*Czyzewski v. Jevic Holding Corp.*
    580 U.S. 451 (2017)............................................................................15

*Denezpi v. United States*
    596 U.S. 591 (2022)............................................................................18

*Fargo Women's Health Org. v. Schafer*
    18 F.3d 526 (8th Cir. 1994) ..................................................................5

*Fox Valley & W. Ltd. v. I.C.C.*
    15 F.3d 641 (7th Cir. 1994) ..................................................................8

*FTC v. Mallett*
    818 F. Supp. 2d 142 (D.D.C. 2011)......................................................19

*FTC v. World Wide Factors, Ltd.*
    882 F.2d 344 (9th Cir. 1989) ...............................................................19

*Gregory v. Helvering*
    293 U.S. 465 (1935)..............................................................................9

*Harrington v. Purdue Pharma L. P.*
    603 U.S. 204 (2024) ............................................................................................ 14

*Heath v. Alabama*
    474 U.S. 82 (1985) .............................................................................................. 17

*In re AFY*
    734 F.3d 810 (8th Cir. 2013) .............................................................................. 16

*In re Burgess*
    246 B.R. 352 (B.A.P. 8th Cir. 2000) .................................................................. 16

*In re Channel One Commc'ns, Inc.*
    117 B.R. 493 (Bankr. E.D. Mo. 1990) ............................................................... 13

*In re Ewell*
    958 F.2d 276 (9th Cir. 1992) .............................................................................. 16

*In re Gucci*
    105 F.3d 837 (2d Cir. 1997) ................................................................................. 2

*In re Gulf Coast Oil Corp.*
    404 B.R. 407 (Bankr. S.D. Tex. 2009) ............................................................... 13

*In re Lionel Corp.*
    722 F.2d 1063 (2d Cir. 1983) ............................................................................. 14

*In re M Capital Corp.*
    290 B.R. 743 (B.A.P. 9th Cir. 2003) .................................................................. 16

*In re Reg'l Evangelical All. of Churches, Inc.*
    592 B.R. 375 (Bankr. D. Kan. 2018) .................................................................. 16

*In re Revel AC, Inc.*
    802 F.3d 558 (3d Cir. 2015) ................................................................................. 6

*In re Sindesmos Hellinikes-Kinotitos of Chicago*
    607 B.R. 898 (Bankr. N.D. Ill. 2019) ................................................................. 20

*In re Stratford Hotel Co.*
    120 B.R. 515 (E.D. Mo. 1990) ............................................................................. 5

*In re Wesco Aircraft Holdings, Inc.*
No. 23-90611, 2025 WL 354858 (Bankr. S.D. Tex. Jan. 15, 2025) .................12

*In re White Crane Trading Co., Inc.*
170 B.R. 694 (Bankr. E.D. Cal. 1994)................................................................16

*Iowa Utils. Bd. v. FCC*
109 F.3d 418 (8th Cir. 1996) ...............................................................................6

*Kight v. CashCall, Inc.*
200 Cal. App. 4th 1377 (2011) ..........................................................................11

*Kraft, Inc. v. County of Orange*
219 Cal. App. 3d 1104 (1990) ........................................................................8, 11

*MCI Commc'ns Servs., Inc. v. California Dep't of Tax & Fee Admin.*
28 Cal. App. 5th 635 (2018) ..........................................................................11, 12

*Nken v. Holder*
556 U.S. 418 (2009).............................................................................................6

*Norwest Bank Worthington v. Ahlers*
485 U.S. 197 (1988)........................................................................................1, 15

*United Farm Workers of Am., AFL-CIO v. Dutra Farms*
83 Cal. App. 4th 1146 (2000) ..............................................................................8

*Watson v. Ray*
192 F.3d 1153 (8th Cir. 1999) .............................................................................7

STATUTES

11 U.S.C. § 363 ...............................................................................................*passim*

11 USC § 1123 ........................................................................................................14

Cal. Bus. & Prof. Code § 17200 ...........................................................................18

Cal. Civ. Code § 56.181 ...............................................................................1, 7, 17

Cal. Civ. Code § 56.265 ........................................................................................10

Cal. Civ. Code § 798.80 ........................................................................................10

Cal. Civ. Code § 1785.16.2 ........................................................................10

Cal. Civ. Code § 1794.4(d) .........................................................................10

Cal. Civ. Code § 2223 ................................................................................19

Cal. Civ. Code § 2224 ................................................................................19

**COURT RULES**

Fed. R. Bankr. P. 2018 .................................................................................4

Fed. R. Bankr. P. 8007 ...............................................................................20

Fed. R. Bankr. P. 8013 ...........................................................................3, 23

Fed. R. Bankr. P. 8015 ...............................................................................23

Fed. R. Bankr. P. 9014 ...............................................................................20

## I.    INTRODUCTION

The People of the State of California move this Court for a limited stay pending appeal under Federal Rules of Bankruptcy Procedure 8007(b) and 8013(d). The People respectfully ask this Court to pause the transfer of approximately 1.8 million Californians' biological samples and genetic data before Debtors begin transferring the samples and data to TTAM, a newly formed organization controlled by Debtor's co-founder and former CEO. **The transfer is set to begin July 7 at 11:59 p.m.** The Bankruptcy Court held a hearing on July 7 at 1:30 p.m. and denied the People's motion for a stay pending appeal.

The proposed transfer violates California privacy law. California's Genetic Information Privacy Act ("GIPA") requires Debtors to obtain "separate and express consent" before transferring customers' genetic data and biological samples to a third party. Cal. Civ. Code §§ 56.18–56.186. But Debtors refuse to obtain the legally required consent, and the Bankruptcy Court has improperly insulated Debtors from doing so. The proposed sale also violates the Bankruptcy Code. Debtors seek to accomplish under § 363, what can be accomplished—if at all—only through a Chapter 11 plan of reorganization. *See, e.g.*, *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207 (1988) (explaining that courts cannot deviate from the procedures "specified by the [Bankruptcy] Code," even when they sincerely "believ[e] that . . . creditors would be better off").

Mootness is palpable and will certainly be raised by sale proponents in an attempt to defeat this Court's appellate review. "It therefore becomes important for district judges to appreciate the special consequences of denying a stay of a bankruptcy sale, even a very brief stay to permit this Court time to consider whether it believes a stay pending appeal is warranted." *In re Gucci*, 105 F.3d 837, 840 (2d Cir. 1997). Accordingly, a short, limited stay is reasonable and appropriate so that this Court can determine whether the Bankruptcy Court legally erred in its authorization under § 363 to permit the transfer of 1.8 million Californians' genetic data and biological samples in contravention of state-law transfer restrictions.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On March 23, 2025, the 23andMe companies filed bankruptcy. Debtors run a "direct-to-consumer genetic-testing business." [Ex A ("Op.") at 2.] In a "first day" motion, Debtors sought to sell substantially all assets under 11 U.S.C. § 363(c) and proposed bidding procedures. [Ex D.] The Bankruptcy Court approved modified bidding procedures. [Ex F.] After the auction, Debtors filed a notice that they selected a pharmaceutical company as the winning bidder, with TTAM as the backup bidder, with draft purchase agreements for both attached. [Ex G.] Debtors re-opened the auction to allow both entities to submit final bids. [Op. at 5; Ex. F.]

On June 9, the People and others objected to the proposed sale to the

2

pharmaceutical company. [Ex. H.] Four days later, Debtors selected TTAM as the winning bidder and filed a new version of TTAM's asset purchase agreement, which added a brief description of an "Equity Toggle." [Ex. I, at 152–53.]

On June 14, Debtors delayed the sale hearing a day and exercised the "Equity Toggle," ostensibly changing the immediate—but not ultimate—purchaser of genetic data and biological samples from TTAM to NewCo. [Ex J.] On June 16, the People filed a supplemental objection. [Ex K.] On June 17, Debtors filed their omnibus reply, providing a slightly longer description of the two-step transaction. [Ex K at 15–17.] A two-day evidentiary hearing followed on June 18 and 20.

On June 27, the Bankruptcy Court approved the sale. [Exs A, B, C.] The Bankruptcy Court shortened the bankruptcy rules' automatic 14 day stay of sale orders to 10 days. Thus, Debtors and TTAM may "consummate" the sale transaction "at any time after 11:59 p.m., prevailing Central Time, on Monday, July 7, 2025." [Ex C at 46.] Exhibit B to the Sale Order is a longer description of the two-step transaction. [*Id*. at 166–68.]

On July 3, the People filed their Notice of Appeal. [Bkr Dkt 932.] On July 4, the People filed a motion for stay pending appeal, which is substantially similar to the present motion (cf. Fed. R. Bankr. P. 8013(d)(2)(B)). [Ex N.] The Bankruptcy Court heard the People's stay motion on July 7 at 1:30 p.m. and denied the People's Motion. [Ex O.] In its oral bench ruling, available at Bkr Dkt 959, the

Bankruptcy Court reasoned:

- The Bankruptcy Court did not believe that the People made a strong showing of likelihood of prevailing on the merits for three reasons: first, Rule 2018(b) was a potential bar to appellate standing; second, the People had a chance of success (although the Bankruptcy Court disagrees with the People's position), an appellate court may agree; and third, there are possible alternate grounds for affirmance, either through a preemption analysis or an entity argument discussed in a footnote.

- Irreparable injury: The Bankruptcy Court assumed that possible mootness may be irreparable injury. It reasoned that any injury to consumers could be reparable, as a consumer could delete their accounts.

- Harm to others: The Bankruptcy Court reasoned that a stay would risk TTAM closing the deal and the Bankruptcy Court believed that Debtors and TTAM would be able to consummate the transaction under the Plan Toggle, but at a cost of $20m to accomplish it but no additional benefit to consumers.

- Public Interest: The Bankruptcy Court reasoned that this factor was neutral.

- Bond: The Bankruptcy Court indicated that it would require a substantial bond (possibly one of two numbers: the $305,000,000 purchase price or the possible $20,000,000 loss to the estate if it exercised the plan toggle) but did not need to decide, as it was denying the motion.

## III.    LEGAL STANDARDS

**Standard of Review.** Because the Bankruptcy Court denied the People's stay request, this Court's role is to determine if "the trial court abused its discretion." *In re Stratford Hotel Co.*, 120 B.R. 515, 516 (E.D. Mo. 1990). "In determining whether the bankruptcy court abused its discretion in denying the stay based on its assessment of the application of the[] four [stay] factors to the present case, this Court may review its legal conclusions *de novo,* but its factual conclusions must be upheld unless clearly erroneous." *Id.* at 517 (citing *In re Apex Oil Company*, 884 F.2d 343 (8th Cir. 1989)).

**Stay Factors**. Four factors are relevant to a request for a stay pending appeal: (1) likelihood of success on the merits; (2) irreparable injury; (3) substantive harm to other interested parties; and (4) the public interest. *Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 538 (8th Cir. 1994). "The most important factor is the appellant's likelihood of success on the merits." *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011). Ultimately, however,

this Court "must consider the relative strength of the four factors, balancing them all." *Id*. (quotation marks and citation omitted).

## IV.  ARGUMENT

The People seek a limited stay to maintain the status quo as to only affected California consumers to ensure that the "legality" of Debtors' sale transactions authorized under § 363 can be "conclusively determined" on appeal. *Nken v. Holder*, 556 U.S. 418, 428–29 (2009).

### A.    The People are likely to prevail on the merits of the appeal.

To establish this prong, "absolute certainty of success" is not required. *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 423 (8th Cir. 1996). "Serious doubts" are enough. *Brady*, 640 F.3d at 792. The proponent of a stay need only "make a sufficient showing that . . . it can win on the merits (significantly better than negligible but not greater than 50%) . . . ." *In re Revel AC, Inc.*, 802 F.3d 558, 571 (3d Cir. 2015).

Here, the People meet this standard: (1) the Bankruptcy Court misapplied the plain language of GIPA; (2) the multi-step transfer of assets and equity is an improper use of § 363.

### 1.    The Bankruptcy Court misapplied California law.

The Bankruptcy court erred when it held that GIPA did not prohibit the transfer of genetic data or biological samples to third parties, like TTAM or even NewCo, without "express consent." GIPA plainly requires express consent before

any transfer to a third party:

> [A] direct-to-consumer genetic testing company shall . . . [o]btain a consumer's express consent for collection, use, and disclosure of the consumer's genetic data, including, at a minimum, separate and express consent for . . . [e]*ach transfer or disclosure of the consumer's genetic data or biological sample to a third party* . . . .

Cal. Civ. Code § 56.181.

Debtors' sale was intended to transfer genetic data and biological samples to a third party: TTAM. Indeed, TTAM confirmed it wanted the genetic data and biological samples. *See, e.g.,*, Tr. 1 at 152:6–7 (Answer: "Well, the company, all the assets within the company, including the data").

The Bankruptcy Court misread the law when it held that the transaction was not to a third party. "When determining the meaning of a statute, [the Court's] starting point must be the plain language of the statute." *Watson v. Ray*, 192 F.3d 1153, 1155 (8th Cir. 1999). GIPA does not define "third party," and thus its "ordinary common sense meaning" controls. *Id*. GIPA identifies just three types of parties: the consumer, the direct-to-consumer genetic testing company, and a third party. The statute then has two exceptions regarding specific types of third parties: a service provider, 56.181(b)(10), 56.181 and certain postsecondary educational institutions. Cal. Civ. Code §§ 56.181(a)(2)(D), (a)(2)(F). Neither exception is applicable here. Thus, debtors' transfers of genetic data and biological samples to either NewCo or to TTAM both constitute transfers to a "third party" under

GIPA's "ordinary common sense meaning."

This reading of GIPA comports with California law. California subscribes to the "separate entity theory," in which "corporations, partnerships, joint ventures, and associations have an identity apart from that of the owners." *Kraft, Inc. v. County of Orange*, 219 Cal. App. 3d 1104, 1109 (1990). Further, courts "must construe [California] consumer protection statutes liberally so as to accomplish their remedial purpose." *BBBB Bonding Corp. v. Caldwell*, 73 Cal. App. 5th 349, 365 (2021). Accordingly, California law makes quite clear that both NewCo and TTAM are third parties subject to GIPA's transfer restrictions absent consent.

The Bankruptcy Court erred in two main ways, first by improperly subdividing a two-step transaction into two unconnected steps. This improperly creates a loophole in the statue that the California legislature never intended in statute meant to protect genetic privacy. *See United Farm Workers of Am., AFL-CIO v. Dutra Farms*, 83 Cal. App. 4th 1146, 1156 (2000) (rejecting statutory "interpretation [that] creates a loophole that greatly undermines the strength of the statute"); *see also, e.g.*, *Fox Valley & W. Ltd. v. I.C.C.*, 15 F.3d 641, 645 (7th Cir. 1994) (cautioning against "obvious loopholes opened by the manipulation of corporate forms," otherwise "the statute will be quickly nullified by clever lawyers"). Here, the purpose of the transaction is to transfer genetic data and biological samples from Debtors to TTAM, a third party, by involving a newly-

formed third-party "subsidiary." TTAM is paying Debtors because TTAM values that data, even if TTAM nominally styles it as a payment for stock. This impermissibly creates a privacy loophole in a privacy statute, which is disfavored interpretation and certainly not one supported by the plain text as discussed above. Indeed, the Bankruptcy Court's analysis of GIPA provides a blueprint for all genetic-testing companies—*whether inside or outside bankruptcy*—to evade GIPA's transfer restrictions by simply forming a subsidiary, transferring the genetic assets to that subsidiary, and then selling the subsidiary's equity—to any third party. Holding that the transfer to NewCo and sale of its equity rather than assets somehow permits the evasion of GIPA "would be to exalt artifice above reality and to deprive the statutory provision in question of all serious purpose." *Gregory v. Helvering*, 293 U.S. 465 (1935).

The second error focuses on the first step in the Bankruptcy Court's divided-step analysis. The Bankruptcy Court should not have read an "implicit" exception to "third party" that covers a newly formed subsidiary created to transfer assets. As discussed above, GIPA exempts only two specific types of third parties: service providers and some educational institutions. It does not have an express subsidiary/affiliate exception. Despite GIPA's plain language, the Bankruptcy Court posits that the California legislature must have intended a subsidiary/affiliate exception. But the California legislature knows how to include such an exception

in a statutory regime and did not provide one here. These are just a few examples where the California legislature provided an express subsidiary/affiliate exception:

- California's Confidentiality of Medical Information Act prohibits disclosure of a customer's individually identifiable information and expressly addresses affiliates. Cal. Civ. Code § 56.265.

- California's Consumer Credit Reporting Agencies Act prohibits certain types of debt sales. Cal. Civ. Code § 1785.16.2(a). It has a subsidiary/affiliate exception. *Id.* § 1785.16.2(b).

- California's Mobilehome Residency Law requires a mobilehome park owner to provide at least 30 days' notice of an intent to sell the park in certain situations, which may result in park residents getting a right to purchase the park. Cal. Civ. Code § 798.80(a). It has a subsidiary/affiliate exception. *Id.* § 798.80(e).

- In a section governing consumer warranties, the Civil Code limits the circumstances in which a service contractor may cancel a service contract, including where "affiliates" are involved. Cal. Civ. Code § 1794.4(d), (e)(1).

To support an implicit exemption, the Bankruptcy Court reasons that GIPA "must be understood" to permit disclosure to a company's employees, who "though technically distinct 'persons' from the company, are part of the company

for purposes of its statutory restrictions on disclosure and transfers." [Op. at 22.] As a matter of California law, the Bankruptcy Court is wrong. In California, employees are not distinct persons from the corporation. Rather, "[b]ecause a corporation is a legal fiction that cannot act except through its employees or agents, a corporation and its employees generally function as a single legal unit and are the same legal 'person' for purposes of applying various tort, agency, and jurisdiction principles." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1392 (2011). In contrast, California law generally provides that a subsidiary is a "separate entity." *Kraft*, 219 Cal. App. 3d at 1109.

The Bankruptcy Court's reliance on *MCI Commc'ns Servs., Inc. v. California Dep't of Tax & Fee Admin.*, 28 Cal. App. 5th 635 (2018) is inapposite. [Op. at 25.] First, the language quoted by the Bankruptcy Court does not appear in the decision's legal discussion; it is from the factual background. *MCI Commc'ns Servs.*, 28 Cal. App. 5th at 640–41. This distinction matters because the decision is an appeal of a demurrer to a complaint and facts are largely assumed true as alleged (similar to a Rule 12(b)(6) analysis). Second, applying the Bankruptcy Court's holding to *MCI* would, no doubt, change *MCI*'s outcome. There, MCI purchased materials from "third party vendors and intercompany affiliates." *Id*. at 640. MCI paid use tax on the materials and then sought—but was denied—a refund. *Id.* at 640–41. Under the Bankruptcy Court's analysis, MCI's purchase of

materials from intercompany affiliates should not have any legal import. But it did:

the transfer of materials from MCI's affiliate to itself triggered a use tax. Finally,

*MCI* cautions against creating implicit statutory exceptions:

> Had the Legislature intended section 6016.5 to apply to poles, towers, or conduit that would, in the *future*, support telephone or telegraph lines, it could have stated as much. But it did not. Our role in interpreting the statute is "not to insert what has been omitted, or to omit what has been inserted." (Code Civ. Proc., § 1858; see *Stirling v. Brown* (2018) 18 Cal.App.5th 1144, 1156, 227 Cal.Rptr.3d 645 [" ' "It is ... against all settled rules of statutory construction that courts should write into a statute by implication express requirements which the Legislature itself has not seen fit to place in the statute." ' "].)

*Id.* at 646 (alterations in original). Here, the Bankruptcy Court improperly inserted

a subsidiary/affiliate exception into GIPA.[1]

In sum, the People are likely to prevail on the merits. It was legal error for

the Bankruptcy Court to reject the plain language of GIPA by reading in unwritten

exceptions.

### 2.    The multi-step transaction, facilitated by the creation of a non-debtor entity, is an improper use of § 363.

Debtors have repeatedly made clear the purpose of this bankruptcy case:

"Debtors commenced these chapter 11 cases to effectuate a value-maximizing sale

of substantially all or a portion of their assets . . . ." [Ex D at 5.] To accomplish

---

[1] Similarly, *In re Wesco Aircraft Holdings, Inc.*, No. 23-90611, 2025 WL 354858 (Bankr. S.D. Tex. Jan. 15, 2025), is inapposite. This unpublished Texas bankruptcy decision does not purport to interpret or apply California law—rather, the court construed the term "third party" as used in a certain unsecured note indenture.

this, Debtors sought and obtained first-day orders to sell substantially all their assets—including vast amounts of genetic data and biological samples—through § 363 of the Bankruptcy Code. While a "sale of substantially all of the Debtor's assets other than in the ordinary course of business and without the structure of a Chapter 11 Disclosure Statement and Plan is not prohibited by the Bankruptcy Code[,]" *In re Channel One Commc'ns, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990), "the sale must be closely scrutinized, and the proponent bears a heightened burden of proving the elements necessary for authorization." *Id*. Notably, there are no wasting assets at issue here that would necessitate a § 363 sale. *See, e.g.*, *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 423 (Bankr. S.D. Tex. 2009) ("Disposition of perishable assets is the archetype justification for a § 363(b) sale.").

Here, the transaction approved by the Bankruptcy Court is a far cry from the sale contemplated by Debtors even just a few days before the sale hearing commenced. In the end, the Debtors' "sale" requires that (1) Debtors create a new non-debtor entity, NewCo, subject to various conditions; (2) Debtors "effectuate intercompany transfers" of assets and liabilities among themselves; (3) Debtors invoke § 363 to sell genetic data and biological samples (free and clear) and transfer some liabilities to NewCo in exchange for a promissory note; (4) Debtors invoke § 363 to sell its equity in NewCo (free and clear) to TTAM in exchange for $305 million. [*See* Ex C at 167–68 (Exhibit B: Equity Sale Steps Plan).]

Debtors call this a "§ 363 sale." [Ex L; also Bkr Dkt 776 (TTAM reply).] "But word games cannot obscure the underlying reality." *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 223 (2024). This transaction is outside the bounds of what can be accomplished through § 363. This looks like and attempts to accomplish, a complex corporate reorganization. Indeed, the creation of non-debtor entities to effectuate a bankruptcy transaction is expressly authorized under the Bankruptcy Code's plan-implementation provisions—there is no express authority to do so under § 363. *See* 11 USC § 1123(a)(5)(B) ("[A] plan shall . . . provide adequate means for the plan's implementation, such as . . . transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan . . . .").

The Bankruptcy Court repeatedly suggests that this exact structure could be accomplished in a Chapter 11 plan—just at a monetary cost.[2] But § 363 does not grant *carte blanche* to swallow up Chapter 11's safeguards. *In re Lionel Corp.*, 722 F.2d 1063, 1070 (2d Cir. 1983); *id.* at 1071 ("As the Supreme Court has noted, it is easy to sympathize with the desire of a bankruptcy court to expedite bankruptcy reorganization proceedings for they are frequently protracted. 'The need for

---

[2] *See, e.g.*, Op. at 6 ("If exercised, [the Plan Toggle] would result in the completion of the proposed transaction through a Chapter 11 plan, rather than through a Section 363 sale. Under that plan, TTAM would become the sole owner of the reorganized Debtors, resulting in exactly the same structure as under the Equity Toggle.").

expedition, however, is not a justification for abandoning proper standards.'") (citation omitted).

Congress and the U.S. Supreme Court are clear: The Bankruptcy Code's procedures and protections matter, and neither expediency nor convenience are a reason to bypass them. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468–69 (2017) (declining to "alter the balance struck by the [bankruptcy] statute," even in "rare cases"); *Norwest Bank Worthington*, 485 U.S. at 207 (explaining that courts cannot deviate from the procedures "specified by the [Bankruptcy] Code," even when they sincerely "believ[e] that . . . creditors would be better off").

### 3. Neither TTAM nor NewCo is entitled to good-faith purchaser protection under § 363(m).[3]

The People have steadfastly maintained that the "Equity Toggle" is an improper artifice designed to evade state-law express-consent requirements, like GIPA. For their part, Debtors occasionally acknowledge as much. [*See, e.g.*, Ex L at 15 ("the transaction would not implicate state laws if the Purchaser could effectuate a change in ownership through the purchaser of the Debtors' stock").]

The Bankruptcy Code does not "provide a definition of good faith," but

---

[3] The Bankruptcy Court correctly noted that § 363(m) is for an appellate court to decide. [Ex A at 32.] Accordingly, the People's presentation of this appellate issue was necessarily limited before the Bankruptcy Court. Cf. Fed. R. Bankr. P. 8013(d)(2)(B).)

"courts generally have followed traditional equitable principles in holding that a good faith purchaser is one who buys 'in good faith' and 'for value.'" *In re AFY*, 734 F.3d 810, 817–18 (8th Cir. 2013). Typically, "lack of good faith is shown by misconduct surrounding the sale." *In re Burgess*, 246 B.R. 352, 356 (B.A.P. 8th Cir. 2000). "[T]he requisite misconduct necessary to establish a lack of good faith involves fraud, collusion between the purchaser and other bidders or the trustee [often, the debtor in possession], or an attempt to take grossly unfair advantage of other bidders." *Id.*; *In re Ewell*, 958 F.2d 276, 279 (9th Cir. 1992). The burden of proof to show good faith is on the proponent of good faith, usually the party seeking dismissal of the appeal; it may not be assumed. *In re M Capital Corp.*, 290 B.R. 743 (B.A.P. 9th Cir. 2003).

TTAM is not a good-faith purchaser. At bottom, TTAM has participated with Debtors in a gambit to structure the transfer of massive amounts of genetic data in a manner that attempts to evade state law. Complicity in such attempts is paradigmatic bad faith. *See In re White Crane Trading Co., Inc.*, 170 B.R. 694, 705 (Bankr. E.D. Cal. 1994) (purchaser lacked requisite good faith where parties failed to reveal the proposed sale would violate state consumer-protection laws); *see also, e.g.*, *In re Reg'l Evangelical All. of Churches, Inc.*, 592 B.R. 375, 384 (Bankr. D. Kan. 2018) ("bad faith" where debtor files bankruptcy "for the purpose of defeating the creditor's state law remedies").

As for NewCo, the Bankruptcy Court said only that a § 363 sale of genetic data to NewCo was "integral" to the subsequent § 363 sale of equity to TTAM. The People are unaware of any decision where the good-faith finding of one § 363 purchaser was imputed to another, distinct purchaser in a separate § 363 transaction. This too was legal error.

**B.    Irreparable injury if the stay is denied.**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024) (quoting *Gen. Motors Corp. v. Harry Brown's LLC*, 563 F.3d 312, 319 (9th Cir. 2009)).

The People have a "sovereign interest[]" in "exercise[ing] [California's] sovereign power over individuals and entities within the relevant jurisdiction—[which] involves the power to create and enforce a legal code, both civil and criminal . . . ." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982); *see also, e.g.*, *Heath v. Alabama*, 474 U.S. 82, 93 (1985) (state has an "interest in vindicating its sovereign authority through enforcement of its laws"). Through GIPA, the California legislature sought to empower consumers to "safeguard the privacy, confidentiality, security, and integrity of a consumer's genetic data . . . ." Cal. Civ. Code § 56.181(a); *see also* 2021 Cal. Legis. Serv. Ch. 596 (S.B. 41) ("Genomic data is highly distinguishable. . . . The potential

information hidden within genomic data is cause for significant concern."). The Bankruptcy Court's misinterpretation and misapplication of GIPA frustrates this sovereign interest, and if left in place will cause harm to California and its residents that cannot be remedied through an award of damages. *See, e.g.*, *Denezpi v. United States*, 596 U.S. 591, 597 (2022) ("[A] law is defined by the sovereign that makes it, expressing the interests that the sovereign wishes to vindicate.").

Indeed, the Bankruptcy Court has identified irreparable harm as to innumerable Californians:

> Some subset of customers probably would prefer not to do business with TTAM but are not in a position to opt out by deleting their accounts. This may be because they no longer have access to their login credentials, because they are deceased, because they ignore email messages, or for some other reason.

[Op. at 18.] California law protects these consumers—consumers who do not want TTAM to have their data *but cannot opt out*—by conditioning TTAM's acquisition of their biological samples and genetic data on the consumer agreeing to it. Under the Bankruptcy Court's order, consumers have no choice. Their data goes to TTAM.

## C.    Weighing the public interest and assessing harm to Debtor.

The public interest will be served by granting a stay in two respects. When the People bring a civil action under California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.*, it "'is fundamentally a law enforcement action

designed to protect the public and not to benefit private parties.'" *City & County of San Francisco v. PG&E Corp.*, 433 F.3d 1115, 1125–26 (9th Cir. 2006) (quoting *People v. Pac. Land Rsch. Co.*, 20 Cal. 3d 10, 17 (1977)). So too, here: the People objected to vindicate California's genetic privacy laws, to protect the California public—not to benefit private parties. *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight."); *cf. FTC v. Mallett*, 818 F. Supp. 2d 142, 149 (D.D.C. 2011) ("public interest in ensuring the enforcement of federal consumer protection laws is strong").

Second, the bankruptcy estate may be preserved for creditors (and potentially shareholders). In the decision, the Bankruptcy Court wrote:

> [California] argues that because the State can pursue a civil penalty for each transfer of genetic information without opt-in consent, the bankruptcy estates may be largely devoted to paying civil penalties rather than to compensating creditors and shareholders. *See* Cal. Civ. Code §§ 56.181(a)(2), 56.182. But, as discussed above, I have concluded that the sale does not violate California law.

[Op. at 30.] If the People prevail on appeal, civil penalties for the bankruptcy estate's violation of California law would likely be entitled to administrative priority. Further, TTAM would be in wrongful possession of vast amounts of California consumers' genetic data and biological samples and thus holding those assets in constructive trust under California law. Cal. Civ. Code §§ 2223, 2224.

Moreover, Debtor will not be substantially harmed by the requested stay because the sale order does not conclude this bankruptcy case. Debtors are still operating Lemonaid. Debtors must still manage assets excluded from the sale (including the genetic data and biological samples of individuals who submitted deletion requests). Debtors must still draft, propose, and try to confirm a plan regardless. As discussed below, there is no substantiation that Debtors will be harmed should they proceed with a Chapter 11 plan instead of a § 363 transaction.

### D.    An appellate bond would be unnecessary and inappropriate.

Federal Rule of Bankruptcy Procedure 8007 does not mandate a bond. Fed. R. Bankr. P. 8007; *see, e.g.*, *In re Sindesmos Hellinikes-Kinotitos of Chicago*, 607 B.R. 898, 913 (Bankr. N.D. Ill. 2019) ("bonds on stays pending bankruptcy appeals are discretionary).

In dicta, the Bankruptcy Court has suggested that a bond might be appropriate if it had granted a stay. The People respectfully disagree. Here, a bond is unnecessary and inappropriate because this appeal is not from a monetary judgment—thus, the appellee's risk of being unable to collect on its judgment is not at stake. *Id.*, 607 B.R. at 913 ("The case law regarding exercise of that discretion is not helpful in the matter at bar, as the criteria discussed by the courts do not lend themselves well to Rule 62 as directed to apply to a sale order under Bankruptcy Rule 9014. Most cases apply instead to the appeal of monetary

judgments.") (citation omitted). Moreover, the People are acting in the public interest, to protect affected California consumers and vindicate state law, as discussed above, further undercutting the necessity of a bond. *See Richland/Wilkin Joint Powers Auth.*, 826 F.3d at 1043 ("permissible for the district court to waive the bond requirement based on its evaluation of public interest").

## V.    CONCLUSION

For the foregoing reasons, the People request that this Court grant the

motion and stay the transfer of identifiable California consumer biological samples

and genetic data.


Dated: July 7, 2025                        Respectfully submitted,

Rob Bonta
Attorney General
Nicklas A. Akers #211222(CA)
Senior Assistant Attorney General

*/s/ Daniel M.B. Nadal*

Bernard A. Eskandari #244395(CA)
Stacey D. Schesser #245735(CA)
Supervising Deputy Attorneys General
Yen P. Nguyen #239095(CA)
Daniel M.B. Nadal #299661(CA)

Attorneys for The People of the State of
California

Deputy Attorneys General
CALIFORNIA DEPARTMENT OF
JUSTICE
455 Golden Gate Ave., Ste. 11000
San Francisco, California 94102
Telephone:  (415) 510-3497
Facsimile:  (916) 731-2146
Email:         bernard.eskandari@doj.ca.gov
                    stacey.schesser@doj.ca.gov
                    titi.nguyen@doj.ca.gov
                    daniel.nadal@doj.ca.gov

**Certificate of Compliance with Type-Volume Limit, Typeface Requirements, and Type-Style Requirements**

1. This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 4,943 words.

2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using "Microsoft® Word for Microsoft 365 MSO (Version 2408 Build 16.0.17928.20336) 64-bit"in 14 point Times New Roman font.

Signature              /s/ Daniel M.B. Nadal _____

                              Date: July 7, 2025

## Certificate of Service

The undersigned certifies that on July 7, 2025, a true and correct copy of the foregoing document will be filed with the Clerk of the United States District Court for the Eastern District of Missouri and will be served on the parties registered to receive electronic notice via the Court's CM/ECF System.

In addition, upon receipt of the file-stamped copy, the undersigned will promptly and separately transmit the documents to counsel for Debtors and TTAM.

/s/ Daniel M.B. Nadal
An Attorney for the People of the State of California