## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| *In re:*<br><br>**23ANDME HOLDING CO.** *et al.*,<br><br>        **Debtors.** | |
| **THE PEOPLE OF THE STATE OF CALIFORNIA,**<br><br>        **Appellant(s),**<br><br>  **v.**<br><br>**23ANDME HOLDING CO.,**<br><br>        **Appellee(s).** | **U.S. District Court No. 4:25-CV-00999** |

## OPPOSITION OF TTAM RESEARCH INSTITUTE TO THE MOTION FOR STAY PENDING APPEAL

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................. ii

PRELIMINARY STATEMENT..................................................................... 1

STANDARD OF REVIEW ............................................................................5

ARGUMENT ..................................................................................................6

I.    Appellant Lacks Standing To Appeal Under Federal Rule Of
      Bankruptcy Procedure 2018(b), Eighth Circuit Precedent On
      Bankruptcy Appellate Standing, And Rules Governing Amicus
      Participation. ........................................................................................6

II.   California's Bad-Faith Arguments Are Irrelevant To The Stay Factors
      And Are Meritless In Any Event. ......................................................11

III.  The Stay Would Impose Serious Harm On The Debtors and Is Against
      Public Interest Because TTAM Is Not Obligated To Close the Sale In
      the Face Of Any Stay. ...................................................................... 15

IV.   If the Stay Is Granted, Appellant Must Post a Sufficient Bond.................... 17

CONCLUSION ..........................................................................................20

# TABLE OF AUTHORITIES

## CASES

*In re 23andMe Holding Co.*,
No. 25-40976-357, 2025 WL 1791166 (Bankr. E.D. Mo. June 27, 2025) ........................................................................... *passim*

*In re Adelphia Communications Corp.*,
361 B.R. 337 (S.D.N.Y. 2007) ............................................... 18

*Broidy Capital Management LLC v. Muzin*,
61 F.4th 984 (D.C. Cir. 2023) ................................................ 11

*de la Fuente v. DCI Telecommunication, Inc.*,
269 F. Supp. 2d 237 (S.D.N.Y. 2003) ................................... 18

*In re Diaz*,
No. 6:02-BK-05591-ABB, 2011 WL 285643 (Bankr. M.D. Fla. Jan. 25, 2011) .................................................................................... 19

*In re Henderson*,
57 B.R. 660 (Bankr. W.D. Va. 1986) .................................... 15

*Kleinman v. Hylton*,
No. 6:20-cv-03319-NKL, 2021 WL 612406 (W.D. Mo. Jan. 27, 2021)  6

*In re Patriot Co.*,
303 B.R. 811 (B.A.P. 8th Cir. 2004) ................................ 10,11

*In re Peabody Energy Corp.*,
No. 4:17-CV-01053-AGF, 2017 WL 1177911 (E.D. Mo. Mar. 30, 2017) .................................................................................... 19

*In re Peoples*,
764 F.3d 817 (8th Cir. 2014) ................................................ 10

*In re Pester Refining Co.*,
No. 85-340-C H, 1990 WL 10593978 (Bankr. S.D. Iowa Dec. 10, 1990) 16

*In re President Casinos, Inc.*,
360 B.R. 262 (B.A.P. 8th Cir. 2007) .................................... 17

*Ratcliff v. Rancher's Legacy Meat Co.*,
    No. 20-CV-834 (NEB), 2020 WL 4048509 (D. Minn. July 20,
    2020)...................................................................................................18

*In re Stratford Hotel Co.*,
    120 B.R. 515 (E.D. Mo. 1990) ........................................................... 5,6

*In re U.S. Fidelis, Inc.*,
    481 B.R. 503 (Bankr. E.D. Mo. 2012)................................................... 9

**STATUTES**

11 U.S.C. § 363 ........................................................................*passim*

**COURT RULES**

Fed. R. Bankr. P. 2018(b) ........................................................*passim*

Fed. R. Bankr. P. 8007....................................................................17, 18

Fed. R. Civ. P. 62(d) ........................................................................17

## TABLE OF EXHIBITS

| Exhibit No. | Document | Bankr. Docket No. |
|---|---|---|
| 1 | The People of the State of California's Motion for Stay Pending Appeal | No. 945 |
| 2 | Transcript July 7, 2025 Hearing (submitted under *Declaration of D. Unseth Regarding July 7, 2025 Hearing Transcript*) | |
| 3 | Proof of Claim for California Department of Tax and Fee Administration | Claim No. 6440 |
| 4 | Transcript June 18, 2025 Hearing (submitted under *Declaration of D. Unseth Regarding June 18, 2025 Hearing Transcript*) | |
| 5 | Order (I) Approving (A) the Debtors' Entry Into the Sale Transaction Documents, (B) the Sale to the Purchaser of the Acquired Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (C) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (II) Authorizing the Debtors to Consummate Transactions in Connection Therewith; and (III) Granting Related Relief | No. 910 |
| 6 | Transcript June 20, 2025 Hearing (submitted under *Declaration of D. Unseth Regarding June 20, 2025 Hearing Transcript*) | |
| 7 | *Asset Purchase Agreement By and Among 23andMe Holding Co. and the Direct and Indirect Subsidiaries of 23andMe Holding Co. and TTAM Research Institute Dated as of June 13, 2025* | No. 739, Exhibit A |

**PRELIMINARY STATEMENT**

TTAM Research Institute ("**TTAM**") is the proposed buyer of 23andMe for $305 million pursuant to Section 363 of the Bankruptcy Code. It joins the arguments made by Debtors in opposition to the State of California's Motion to Stay[1] in full and submits this brief to further explain why the stay should be lifted and the appeal dismissed. If it is not, California should be required to post a bond to proceed.

The Court should lift the stay pending appeal—and should consider dismissing this appeal outright—because the State of California lacks standing to appeal the Bankruptcy Court's order. Even if California did have appellate standing, the motion falls far short of the high bar it must meet to obtain a stay and prevent the sale the bankruptcy court has approved.[2] First, there is no harm (much less irreparable harm) to California from the proposed sale of 23andMe to its co-founder at a blockbuster price, which promises significant benefits to all creditors and shareholders—the rare bankruptcy win for all parties—and enhanced privacy protections for 23andMe customers. But there is significant harm to TTAM and the Debtors if a stay is granted and this sale does not proceed. California is also wrong

---

[1] The People of the State of California's Emergency Motion for a Stay Pending Appeal [Dkt. No. 8] (the "**Motion to Stay**").

[2] If the Court dismisses the State's appeal and grants the pending motion to consolidate filed by CAVEAT (*see* Dkt. No. 11), then it should also dismiss the appeal filed by CAVEAT for lack of standing. *See infra*, n. 5. If the Court proposes additional briefing for any substantive appeal, the Court should nevertheless lift the stay for failure of movants to carry their burden, as explained here.

on the merits of the underlying legal dispute. As Judge Walsh twice held (and as the Debtors' brief explains), this sale would not violate California's privacy laws. California's attempt to sidestep those well-reasoned holdings by arguing the lower court should have found "bad faith" should fail.

The context also matters: The bankruptcy proceedings began with objections from more than thirty state attorneys general raising similar privacy-related challenges on behalf of their citizens. Only California remains. And California's litigation-by-emergency tactics attempt to accomplish by virtue of timing what careful consideration would reject on the merits. California waited fourteen days after the sale hearing and seven days after the bankruptcy court's order to file a late-night emergency stay on July 4. Judge Walsh promptly (and correctly) denied the stay, following a lengthy hearing, because California raised no new issues he had not previously rejected. This Court should do the same in what is now California's third bite at the apple.

The Debtors' sale process, which was run by an indisputably independent committee of 23andMe's directors, culminated in a $305 million sale price that represents a 500% premium to 23andMe's stakeholders from the initial bids offered at the bankruptcy auction six weeks ago. The TTAM purchase price is expected to result in full payment for all creditors as well as a significant recovery to equity holders.

Yet California argues the proposed sale is an affront to the California Genetic Information Privacy Act ("**GIPA**"), and that the Debtors and TTAM have disregarded consumer rights in the name of value maximization.  But the substantial record evidence established at the two-day evidentiary hearing, that saw six witnesses (including Ms. Wojcicki) subject to direct- and cross-examination, in support of the sale demonstrated no such disregard and that consumers will gain significant privacy protections through the sale to TTAM.

By including these consumer privacy enhancements, and by structuring the sale to avoid implicating the states' privacy statutes, the Debtors and TTAM obtained approval over the initial objections of 29 state attorneys general who raised similar privacy concerns.  That's because TTAM's purchase has assured all customers that they can delete their accounts if they wish—at any time—in perpetuity.

This Court should deny the Motion to Stay for at least four reasons.

***Point 1***.  Appellant lacks standing to appeal under the plain terms of Federal Rule of Bankruptcy Procedure 2018(b).  Rule 2018(b) is clear: "a state attorney general may appear and be heard on behalf of consumer creditors if the court determines that the appearance is in the public interest[,] [b]ut the state attorney general may not appeal from any judgment, order, or decree entered in [a chapter 11] case."  California cites no case to rebut the plain language of the Rule.  In addition,

California also lacks standing to appeal because it lacks a pecuniary interest sufficient to support ongoing appellate standing.  On this point, California has no credible response.  It sheepishly points to its status as a "creditor" based on a $2,800 state tax claim it filed with the Bankruptcy Court.  But the Bankruptcy Court found no nexus between this claim and its consumer creditor related objection.  This Court should too.

*Point 2*.  California's "bad faith" arguments are irrelevant to the stay factors and fail for lack of evidence.  As argued below, it would turn the statute on its head if a movant that otherwise fails to satisfy the stay factors—as California fails to here—could invoke the purchaser's statutory protections as a reason for a stay.  Regardless, the Bankruptcy Court's good faith finding is supported by an overwhelming record, including (i) TTAM and the Debtors' always acted at arms-length, (ii) TTAM's winning bid was $49 million higher than the prior bid, and (iii) TTAM negotiated exclusively with an independent, special committee of the board.  There is no fraud or collusion required to show bad faith.  TTAM and the Debtors engaged in a good faith process and California's contrary arguments fall short.

*Point 3*.  California has not met its burden to show irreparable harm.  Any stay of the proposed sale will result in irreparable harm to the Debtors and its many stakeholder groups who actually have a pecuniary interest in the outcome of this case.  As explained in more detail below, the TTAM APA provides that TTAM is not

obligated to close the transaction if any portion of the Sale Order is stayed. This Court—just as the Bankruptcy Court found (*see In re 23andMe Holding Co.*, No. 25-40976-357, 2025 WL 1791166, at *25 (Bankr. E.D. Mo. June 27, 2025))—cannot blue pencil the heavily negotiated TTAM APA to carve 23andMe customers who are California residents from the sale.

***Point 4***. The stay must be denied because California has failed to present evidence that it can post a substantial supersedeas bond as required by the Bankruptcy Rules. As Judge Walsh found, the Bankruptcy Rules requires California's Attorney General to post a very significant bond—potentially in the entire amount of the sale price of $305 million—if a stay is entered in order to protect the Debtors and their stakeholders. California has had ample time (and resources) to present evidence of its willingness to post a bond, and has failed to do so. This too is fatal.

The Motion to Stay should be denied and the sale should be allowed to close.

## STANDARD OF REVIEW

This Court reviews the bankruptcy court's denial of a stay for abuse of discretion. In doing so, "this Court may review its legal conclusions *de novo,* but its factual conclusions must be upheld unless clearly erroneous." *In re Stratford Hotel Co.*, 120 B.R. 515, 517 (E.D. Mo. 1990) (citing *In re Apex Oil Company,* 884 F.2d 343 (8th Cir. 1989)). *See also id.* ("[W]here the trial court has already considered and

ruled on the request for a stay pending appeal, the 'appellate' court's role is limited to determining whether the trial court abused its discretion."); *see also Kleinman v. Hylton*, No. 6:20-cv-03319-NKL, 2021 WL 612406, at *1 (W.D. Mo. Jan. 27, 2021) ("The Bankruptcy Court's decision in this [stay] matter is reviewed for abuse of discretion.").

## ARGUMENT

### I.    Appellant Lacks Standing To Appeal Under Federal Rule Of Bankruptcy Procedure 2018(b) and Eighth Circuit Precedent On Bankruptcy Appellate Standing.

The Bankruptcy Court denied California's motion to stay because the State lacks standing to appeal.  That decision was correct, and is based on the plain language of the Federal Rules of Bankruptcy Procedure and Eighth Circuit precedent.

First, Federal Rule of Bankruptcy Procedure 2018(b) allows a state attorney general to appear and be heard on behalf of consumer creditors in the bankruptcy court "if the court determines that the appearance is in the public interest, but the [state] Attorney General may not appeal from any judgment, order, or decree entered in the case."   Fed. R. Bankr. P. 2018(b).   The advisory committee notes to Rule 2018(b) further state "[t]his subdivision does not grant the Attorney General the status of party in interest.  In other contexts, the Attorney General will, of course, be

a party in interest[3] as for example, in representing a state in connection with a tax claim."  Advisory Committee notes to Fed. R. Bankr. P. 2018(b).  It is undisputed that California's state attorney general is acting on behalf of California's citizens specifically in their capacity as consumer creditors (indeed, it is on that basis that they claim they need not post an appeal bond).  The inquiry should end there:  Because California's state attorney general is not permitted to appeal the Sale Order under Rule 2018(b), its request for a stay pending appeal must be denied.

The Bankruptcy Court agreed at the July 7 hearing.  The Bankruptcy Court flatly rejected California's argument that "[t]he People are creditors."  *The People of the State of California's Motion for a Stay Pending Appeal*, Bankr. Ct. Dkt. No. 945 ("**Exhibit 1**") at ¶ 3 n.2.  Instead, the Court held "the nature of [California's] objection, both at the sale hearing and today, relates to the protection of consumers and not to the state's interest in collecting taxes or regulatory fines or the other matters that [the State] alluded to today.  So I believe that California's appeal is likely to fail on the threshold question of standing." *In re 23andMe Holding Co.*, Case No. 25-40976-357 (Bankr. E.D. Mo.), Hr'g Tr. at 76:19-24 (July 7, 2025) ("**Exhibit 2**").  And the obstacle to standing, the Court held, was Rule 2018(b). *See id*. at 76:8-

---

3  A party in interest is a party with a pecuniary interest in the case. *See In re Sandpoint Cattle Company, LLC,* 556 B.R. 408, 417 (Bankr. D. Neb. July 28, 2016) (party in interest generally means "a person who holds a pecuniary interest that could be adversely affected by the outcome of the proceeding").

12 ("The first obstacle here is Federal Rule of Bankruptcy Procedure 2018(b), which provides that when a state Attorney General appears on behalf of consumer creditors, the Attorney General 'may not appeal from any judgment, order or decree in the case.'").

When pressed by the Court, California sought to rest its pecuniary interest in the case on a $2,779.25 proof of claim filed by the California Department of Tax and Fee Administration and the purported injury to data privacy rights that the California Attorney General has been claiming on behalf of California consumer creditors.  *See id.* 76:19-24; Claim No. 6440 (attached hereto as Exhibit 3).  This was a manufactured attempt to fit within a hypothetical contained in the advisory committee's notes.  *See* Advisory Committee notes to Fed. R. Bankr. P. 2018(b) (Attorney General is not a party in interest under this rule, but would be if asserting a tax claim).  The Bankruptcy Court properly rejected this.

Now, before this Court, the argument is even easier, because California repeatedly admits in its Motion to Stay before this Court it appears only on behalf of California consumers.  *See* Motion to Stay at 6 ("The People seek a limited stay to maintain the status quo as to only affected California consumers"); *id.* at 21 ("the People are acting in the public interest, to protect affected California consumers and vindicate state law").  The Court should take California at its word and, in doing so, hold it lacks standing to appeal.

Having provided no written response to the Bankruptcy Court's standing inquiry,[4] California again offers no response to this Court. *See* Motion to Stay at 4 (recognizing Bankruptcy Court's standing concerns but offering no rebuttal). Standing is a threshold issue—because it is in part jurisdictional—federal courts must ensure a party has standing before considering an appeal. *See Int'l Ass'n of Firefighters, Loc. 2665 v. City of Clayton*, 320 F.3d 849, 850-51 (8th Cir. 2003) (dismissing claim for lack of standing and stating "[t]he federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines" (citations omitted)).

It is California's burden to prove its standing, as the party invoking federal court jurisdiction. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990) (burden of standing is with the "party who seeks the exercise of jurisdiction in his favor") (internal citations omitted).

The case law on Rule 2018(b) explains that where, as here, an attorney general represents consumer creditors in a bankruptcy proceeding, it may participate before the bankruptcy court but says nothing about their standing on appeal. *See, e.g., In re U.S. Fidelis, Inc.*, 481 B.R. 503, 517-18 (Bankr. E.D. Mo. 2012) (recognizing state

---

[4]    The Bankruptcy Court raised the Rule 2018(b) issue in its opinion approving the sale. *See 23andMe*, 2025 WL 1791166, at *24.  California, despite having nearly two weeks to address the issue in its papers, has to date only included the footnote argument in its motion to stay before the Bankruptcy Court.  Exhibit 1 at ¶ 3 n.2.

attorneys general vigorously represented consumer creditors with respect to release provisions in plan). This balance struck by the Bankruptcy Rules must be honored, which requires dismissal of the California Motion to Stay.

Second, California also lacks standing because it has no pecuniary interest in the outcome of this case arising from its appearance on behalf of consumer creditors. The Bankruptcy Appellate Panel's decision in *Patriot Company* is on point. In *Patriot Company*, the court held that a stockholder needed to show a "real possibility" that his objection, if sustained, would result in a recovery. *In re Patriot Co.*, 303 B.R. 811, 815 (B.A.P. 8th Cir. 2004). In doing so, the Court explained that bankruptcy appellate standing is narrower than typical article III standing and requires a direct pecuniary interest in the appeal. *See id.* ("[I]n order to have standing to appeal from an order of the bankruptcy court, the appellant must have been aggrieved. A person is aggrieved if he is 'directly and adversely affected pecuniarily by the order.' This principle limits standing to persons with a financial stake in the bankruptcy court's order"); *see also In re Peoples*, 764 F.3d 817, 820 (8th Cir. 2014) (bankruptcy appellate standing is narrower than general Article III standing and is limited "to persons with a financial stake in the bankruptcy court's order, meaning they were directly and adversely affected pecuniarily by the order."). California's stay motion, sale objection, and appeal are based on California's view that the sale

injures California consumers.[5]  But this not a pecuniary interest that gives a party

bankruptcy appellate standing, and therefore California's appeal–and request for a

stay pending appeal–must end before it starts for lack of standing.[6]

## II.    California's Bad-Faith Arguments Are Irrelevant To The Stay Factors And Are Meritless In Any Event.

First and foremost, a party's entitlement to a stay turns solely on whether that

party has satisfied the applicable stay factors.  The Bankruptcy Court's good-faith

determination is irrelevant to that issue, and therefore plays no role in this Court's

decision to extend or terminate the stay.  "[T]he purpose of § 363(m) [is] to ensure

the finality of bankruptcy sales."  *Cornice & Rose Int'l, LLC v. Four Keys, LLC*, 76

F.4th 1116, 1122 (8th Cir. 2023).  It would turn the statute on its head if a movant that

otherwise fails to satisfy the stay factors—as California does here[7]—could invoke

---

[5]  California may attempt to argue an ongoing pecuniary interest due to potential fines under GIPA.  *See* Motion to Stay at 19 (claiming that if California succeeds on appeal it would have a substantial administrative claim for GIPA fines).  But GIPA fines are only owed for negligent or willful violations of the statute.  The Debtors and TTAM would be completing the sale under a Court order, and it defies belief that this or any other Court would find that following a Court order amounts to a negligent or willful violation.  Because bankruptcy appellate standing requires "a real possibility" of a monetary interest in the challenged order–which California clearly lacks–California has no standing to appeal the sale order.  *In re Patriot Co.*, 303 B.R. 811, 815 (B.A.P. 8th Cir. 2004).

[6]  The CAVEAT group fares no better.  Currently before another district court judge but seeking transfer to this court (*see* Dkt. No. 11), they are a group who appeared before the Bankruptcy Court as amicus and therefore lack standing to appeal.  *See Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984, 987 (D.C. Cir. 2023) (amicus curiae lack appellate standing).  If allowed to intervene the CAVEAT group's stay motion should also be rejected, and TTAM reserves all rights and arguments against CAVEAT.

[7]  As set forth above, California's request for a stay fails for want of standing.  It also fails on the merits for the reasons set forth in the Debtors' brief.  TTAM incorporates the Debtors' arguments by reference.

the prospect of section 363(m) protecting the purchaser in the event of reversal as a ground for staying the transaction pending appeal.

Nor does California cite any evidence that calls into doubt the Bankruptcy Court's findings of fact regarding good faith.  In approving the sale of substantially all of the Debtors' assets to TTAM, the Bankruptcy Court found that "all aspects of the Sale Transaction (including the NewCo Sale and the TTAM Equity Sale) were negotiated, proposed, and entered into by the Debtors and the Purchaser . . . without collusion or fraud, from arms'-length bargaining positions, in good faith within the meaning of section 363(m) of the Bankruptcy Code."[8]

That is a factual determination subject to a clear error standard of review. There is no evidence of collusion or bad-faith bargaining between TTAM and the Debtors.  To the contrary, the record is clear that TTAM had to commence litigation against the Debtors and challenge the Debtors' initial decision to accept another buyer in order to win the chance to submit its higher bid.[9]  It was only after the Court

---

[8]  *Order (I) Approving (A) The Debtors' Entry Into The Sale Transaction Documents, (B) The Sale To The Purchaser Of The Acquired Assets Free And Clear Of All Liens, Claims, Interests, And Encumbrances, And (C) The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; (II) Authorizing The Debtors To Consummate Transactions In Connection Therewith; And (III) Granting Related Relief*, Bankr. Ct. Dkt. No. 910 ("**Sale Order**" attached hereto as Exhibit 5), at 10.

[9]  *See 23andMe*, 2025 WL 1791166, at *3; *see generally TTAM Parties' Preliminary Objection to the Sale Motion*, Bankr. Ct. Dkt. No. 573; *Objection of the TTAM Parties To Debtors' Motion For Entry Of An Order (I) Establishing Procedures For The Submission Of Final Proposals From The Backup Bidder and Successful Bidder And (II) Granting Related Relief*, Bankr. Ct. Dkt. No. 601.

reopened the bidding that TTAM prevailed with an offer that was nearly $50 million higher than the next highest bid.  *See 23andMe*, 2025 WL 1791166, at *21.

Moreover, the entire sale process (including the decision to file for Chapter 11) was driven by a special committee of independent directors, which never included TTAM's principal.  Exhibit 5, Sale Order at 10-11.  These facts—none of which are disputed by California—foreclose any suggestion that the sale of the Debtors' assets to TTAM involves "fraud, collusion between the purchaser and other bidders or the trustee . . . or an attempt to take grossly unfair advantage of other bidders."  *In re Burgess*, 246 B.R. 352, 356 (B.A.P. 8th Cir. 2000).  During trial, California presented no evidence to undermine the Bankruptcy Court's amply supported good-faith finding, and thus has not come close to showing "the requisite misconduct necessary to establish a lack of good faith."  *Id.*

So why does California assert TTAM "is not a good-faith purchaser"? California's entire argument is that TTAM "participated with Debtors in a gambit to structure the transfer of massive amounts of data in a manner that attempts to evade state law."  Motion to Stay at 16.  This claim is unsupported by facts and is instead infected with circularity.  The unrebutted testimony of Thomas Walper, a member of the Debtors' special committee, established that the Debtors and TTAM structured the transaction as an equity sale to address and hopefully resolve the objections of over 30 states, most of which had acknowledged that changing ownership of a

13

genetic testing company would not violate their respective laws.[10]  Far from an illicit

"gambit" to "evade state law," this approach evinced the Debtors' and TTAM's

efforts to forge a "collective solution" that would not implicate the genetic privacy

laws at issue, including California's, which do not regulate the transfer of ownership

of companies that own genetic data.  At the sale hearing California conceded this

point.  *See  In re 23andMe Holding Co.*, Case No. 25-40976-357 (Bankr. E.D. Mo.),

Hr'g Tr. at 300:15-19 (June 20, 2025) (attached hereto as Exhibit 6) ("THE

COURT: . . . All right.  So as I understand it, and I think this applies to all five

[objecting] states, the state regulates transfers of genetic information but not

ownership of the companies that hold that information; is that fair?  MR. NADAL:

I believe that's fair, Your Honor.").

California further argues that the Bankruptcy Court's good-faith finding as to

NewCo was "legal error" because the Bankruptcy Court improperly "imputed"

TTAM's good faith to NewCo.  Motion to Stay at 17.  The Bankruptcy Court did no

such thing and this is a transparent attempt to obtain a more favorable standard of *de*

*novo* review.  Rather, the Bankruptcy Court rejected as "unsound on the merits"

---

[10]  *See In re 23andMe Holding Co.*, Case No. 25-40976-357 (Bankr. E.D. Mo.), Hr'g Tr. at 119:21-
120:20 (Walper) (June 18, 2025) (attached hereto as Exhibit 4) ("[D]uring that time, there were
also discussions going on with debtors, professionals, and the various State AGs to try to work
through objections, which they've been, it appears, successful at in some respects and others
not so much, but they're working on it. . . . [The equity toggle] was really the brainchild, if you
will – of the professionals once [they] were engaging with the attorneys general and trying to
bring about a collective solution."); *see also The States' Objection To The Debtors' Proposed
Sale Of Customers' Assets*, Bankr. Ct. Dkt. No. 687, at ¶ 38.

California's (now abandoned) argument that NewCo provided no value for the Debtors' assets.[11]  The Court further concluded, based on controlling Eighth Circuit precedent, that because the transfer of the Debtors' assets to NewCo was an integral part of the equity sale to TTAM, the NewCo transfer was also entitled to section 363(m) protection.[12]  Moreover, California adduced no evidence that NewCo was engaging in "fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders" and thus provides no basis to disturb the Bankruptcy Court's good-faith finding as to NewCo.  *In re Burgess*, 246 B.R. at 356.

## III.    The Stay Would Impose Serious Harm On The Debtors and Is Against Public Interest Because TTAM Is Not Obligated To Close the Sale In the Face Of Any Stay.

A stay of the Sale Order will jeopardize the sale and as a result, have a serious adverse effect on the Debtors and other interested parties here, including creditors, equityholders, employees and other stakeholders.[13]

California attempts to downplay the negative impact of its stay request by suggesting that the Debtors could exclude California consumers' genetic data and biological samples from the sale.  Exhibit 1 at ¶¶ 3, 9; *see also* Exhibit 2, Hr'g Tr. at

---

[11]    *23andMe*, 2025 WL 1791166, at *21.

[12]    *Id.*

[13]    As *The People of the State of California's Errata to Emergency Motion for a Stay Pending Appeal* [Dkt. No. 14] admits, the Bankruptcy Court found this public interest factor in favor of dissolving the stay.

20:6-9.   But any carve-out of California customers from the transaction would violate the sale agreement, a document that was heavily negotiated between the Debtors and TTAM.

Specifically, the agreement includes the following condition to closing: "the Sale Order . . . shall have been entered by the Bankruptcy Court and shall not be subject to stay as of Closing."  *See Notice of Winning Bidder with Respect to the Final Proposal Procedures to Acquire the Debtors' Assets*, Bankr. Ct. Dkt. No. 739, Ex. A (the "**TTAM APA**", attached hereto as Exhibit 7) at § 9.3(b)) (emphasis added).   If any condition to closing becomes impossible to satisfy, TTAM is permitted to terminate the TTAM APA; Section 10.1(e) of the TTAM APA provides: "this agreement may be terminated . . . by Purchaser, . . . in the event that . . . one or more of the conditions to Purchaser's obligation to effect the Closing is or becomes impossible to satisfy at any time after the Execution Date and Purchaser has not waived such condition(s)."  *See* Exhibit 7, TTAM APA § 10.1(e).

The Debtors also made representations and warranties under the TTAM APA that they have the right to transfer all Personal Information included in the Acquired Assets, which includes the genetic data of identifiable California consumers, to TTAM "without undue restriction or delay."  *See* Exhibit 7, TTAM APA § 5.1(l)(iv) ("Sellers have the right to transfer to the Purchaser . . . all Personal Information included in the Acquired Assets in the same manner as in the conduct of the Business

prior to Closing, without undue restriction or delay and without breach of Privacy Requirements, in all material respects."); *see also* § 5.1(w).  TTAM is permitted to terminate the TTAM APA if such representations and warranties are not "true and correct in all material respects" as of the closing date.  *See* Exhibit 7, TTAM APA §§ 9.1(a), 10.1(e).

These provisions of the TTAM APA were agreed to by the Debtors in arms-length, good faith negotiations that took place over several weeks.  The parties should be held to their bargain.  The Bankruptcy Court refused to rewrite this heavily negotiated document to appease the California Attorney General.  In light of the serious harm that would befall the Debtors' stakeholders as a result, so too should this Court.

## IV.   If the Stay Is Granted, Appellant Must Post a Sufficient Bond.

The Bankruptcy Court decided that, were it to have granted the stay, a bond would be required.  *See* Exhibit 2, Hr'g Tr. at 81:3-14.  The Bankruptcy Court's factual findings on the amount of appropriate bond are subject to abuse of discretion review.  *See In re President Casinos, Inc.*, 360 B.R. 262, 264 (B.A.P. 8th Cir. 2007) ("Determinations of the amount and sufficiency of a bond rest within a court's discretion").

Federal Rule of Bankruptcy Procedure 8007, which is guided by Federal Rule of Civil Procedure 62(d), requires appellants seeking a stay to post a bond absent

"exceptional circumstances." *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 350 (S.D.N.Y. 2007). Where, as here, an appellant seeks a stay without a bond, the appellant "has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond." *de la Fuente v. DCI Telecomms., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003). California has not done so. Nor has California presented any evidence, or even confirmed, that it is capable of posting an appropriately sized bond. And courts within this circuit are clear, inability to post a bond does not excuse the bond requirement. *See In re Ennis*, 178 B.R. 187, 188 (Bankr. W.D. Mo. 1995) ("Inability to obtain a supersedeas bond is not a ground to stay execution"). If this Court determines that the Bankruptcy Court did not abuse its discretion in denying a further stay, California's inability to obtain a bond cannot further extend the stay on those grounds.

California offers two reasons why it should not have to post a bond: (1) the appeal is not from a monetary judgment and (2) California is "acting in the public interest, to protect affected California consumers and vindicate state law." Motion to Stay at 20-21. Both arguments fail, as Rule 8007 does not limit the bond requirement to appeals from monetary judgments and no waiver of the bond requirement exists for state governments. *See Ratcliff v. Rancher's Legacy Meat Co.*, 2020 WL 4048509, at *14-15 (D. Minn. July 20, 2020) (requiring a bond for a stay

18

pending appeal of a section 363 sale order, i.e., a non-monetary judgment), *see also In re Diaz*, 2011 WL 285643, at *2 (Bankr. M.D. Fla. Jan. 25, 2011) (no waiver of bond for state governments).

Regardless, ample evidence has been provided of the substantial harms should the Motion to Stay be granted.  In the event that this Court is inclined to grant a stay pending appeal, and consistent with prior precedent in this district, this Court should require Appellant to post a bond of at least $305 million to guard against the substantial damages and irreparable harm stakeholders will suffer.  *See In re Peabody Energy Corp.*, 2017 WL 1177911, at *7 n.6 (E.D. Mo. Mar. 30, 2017) ("If the Court were to grant a stay, it would require a sizeable bond, in the neighborhood of $4 billion, to protect the Debtors and other interested parties against loss caused by an unsuccessful appeal.").

## CONCLUSION

For all of the foregoing reasons, the Motion to Stay should be denied, the stay lifted, and the appeal dismissed. Alternatively, if a stay is granted, the Court should condition the stay on the posting of a supersedeas bond in excess of $305 million.

Dated: St. Louis, Missouri
        July 9, 2025

BRYAN CAVE LEIGHTON PAISNER LLP

*/s/ Katie Spewak*
Barbara A. Smith, #66237MO
David M. Unseth, #48086MO
Katie Spewak, #75979MO
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102-2750
Telephone: (314) 259-2000
Fax: (314) 259-2020
Email: barbara.smith@bclplaw.com
david.unseth@bclplaw.com
katie.spewak@bclplaw.com

– and –

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
Joseph O. Larkin (*pro hac vice* forthcoming)
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Telephone: (302) 651-3000
Fax: (302) 651-3001
Email: Joseph.Larkin@skadden.com

– and –

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Susheel Kirpalani (*pro hac vice* forthcoming)
295 Fifth Avenue
New York, NY 10016
Telephone: (212) 849-7000
Fax: (212) 849-7100
Email: susheelkirpalani@quinnemanuel.com

*Counsel for TTAM*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.      This document complies with the word limit of Fed. R. Bankr. P. 8013(f)(3)(A) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 5,000 words.

2.      This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface in 14 point Times New Roman font.


/s/ Katie Spweak
Date: July 9, 2025

22

## <u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on July 9, 2025, a true and correct copy of the foregoing document was filed with the Clerk of the United States District Court for the Eastern District of Missouri and served on the parties registered to receive electronic notice via the Court's CM/ECF System.

In addition, upon receipt of the file-stamped copy, the undersigned will promptly and separately transmit the documents to counsel for the People of the State of California and the Debtors.

/s/ Katie Spewak
An Attorney for TTAM