# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| IN RE:<br><br>23ANDME HOLDING CO., *et al*.,[1] | Case No. 25-40976-357<br>Chapter 11<br><br>(Jointly Administered) |
| THE PEOPLE OF THE STATE OF CALIFORNIA AND CENTER FOR APPLIED VALUES AND ETHICS IN ADVANCING TECHNOLOGY (CAVEAT),<br><br>        Appellants,<br><br>v.<br><br>23ANDME HOLDING CO., *d/b/a* VG ACQUISITION CORP. *et al*.,<br><br>        Appellees. | Case No. 25-cv-00999-MTS<br><br>Case No. 25-cv-01001-MTS (Cons.)<br><br>Case No. 25-cv-01002-MTS (Cons.)<br><br>Hon. Matthew T. Schelp |

# THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MEMORANDUM IN SUPPORT OF ITS MOTION (I) TO BE RECOGNIZED AS AN APPELLEE OR, IN THE ALTERNATIVE, (II) TO INTERVENE AS AN APPELLEE

---

[1]     The Debtors are: 23andMe Holding Co., 23andMe, Inc., 23andMe Pharmacy Holdings, Inc., Lemonaid Community Pharmacy, Inc., Lemonaid Health, Inc., Lemonaid Pharmacy Holdings Inc., LPharm CS LLC, LPharm INS LLC, LPharm RX LLC, LPRXOne LLC, LPRXThree LLC, and LPRXTwo LLC.

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................1

BACKGROUND ............................................................................................3

REQUESTED RELIEF.....................................................................................7

BASIS FOR RELIEF .....................................................................................8

    A.    The Committee Is Already a Proper Party to this Appeal....................8

    B.    The Committee Moves to Intervene Pursuant to Bankruptcy Rule 8013 ...................................................................................10

        i.    The Committee Has a Direct Interest in the Appeal................10

        ii.    The Grounds for Intervention are Bankruptcy Code Section 1109(b) and Civil Rule 24(a) and (b).........................................11

        iii.    The Committee Actively Participated in the Proceedings Below ...................................................................................12

        iv.    The Committee Moves to Intervene Now To Protect the Rights of Unsecured Creditors .............................................................12

        v.    Unsecured Creditors' Interest Would Not Be Protected as an Amicus Curiae..................................................................12

    C.    The Committee Satisfies Civil Rule 24.............................................12

        i.    The Committee Has The Right to Intervene as of Right .........13

        ii.    Permissive Intervention is Appropriate ....................................16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*South Dakota ex rel Barnett v. U.S. Dept. of Interior*,
  317 F.3d 783 (8th Cir. 2003) ...............................................................15

*In re Bumper Sales, Inc.*,
  907 F.2d 1430 (4th Cir. 1990) ..............................................................9

*Dist. Theaters, Inc. v. Cinemex Holdings USA, Inc.*,
  2022 WL 22903856 (S.D. Fla. July 22, 2022) ....................................14

*Donaldson v. United States*,
  400 U.S. 517 (1971)...............................................................................15

*In re Glickman, Berkovitz, Levinson & Weiner*,
  204 B.R. 450 (E.D. Pa. 1997) ...............................................................9

*J.D. Fields & Company, Inc. v. Nucor-Yamato Steel Company*,
  2015 WL 12696208 (E.D. Ark. June 15, 2015) ..................................16

*Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*,
  759 F.3d 969 (8th Cir. 2014). Civil ....................................................15

*North Dakota v. Heydinger*,
  288 F.R.D. 423 (D. Minn. 2012) ........................................................18

*S. Pac. Transp. Co. v. Voluntary Purchasing Groups, Inc.*,
  227 B.R. 788 (E.D. Tex. 1998)...............................................................9

*Teague v. Bakker*,
  931 F.2d 259 (4th Cir. 1991) ...............................................................11

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972)...............................................................................16

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*,
  164 F.3d 1080 (8th Cir. 1999) .............................................................15

*In re W. Pac. Airlines, Inc.*,
  219 B.R. 575 (D. Colo. 1998)................................................................9

**Statutes**

11 U.S.C. § 363 ...................................................................................................9, 13

11 U.S.C. §§ 1102 ...............................................................................................4, 12

11 U.S.C. §§ 1103 ...................................................................................................12

11 U.S.C. §§ 1107 .....................................................................................................4

11 U.S.C. §§ 1108 .....................................................................................................4

11 U.S.C. § 1109 ...............................................................................................*passim*

**Other Authorities**

Fed. R. Bankr. P. 7024 ..............................................................................................1

Fed. R. Civ. P. 24 .............................................................................1, 8, 13, 14, 15, 17

Fed. R. Bankr. P. 8013 ..........................................................................1, 8, 11, 14 21

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases (the "Chapter 11 Cases") of 23andMe Holding Co. and its affiliated debtors (the "Debtors"), hereby files this memorandum in support of its motion (the "Motion") for entry of an order (I) recognizing that the Committee is a proper appellee in the above-captioned consolidated bankruptcy appeals (the "Appeal") pursuant to 11 U.S.C. § 1109(b) or, in the alternative, (II) permitting the Committee to intervene in the Appeal as an appellee, pursuant to Rule 8013(g) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 24(a)(1)-(2), (b) of the Federal Rules of Civil Procedure (the "Civil Rules"), as made applicable to the Chapter 11 Cases by Bankruptcy Rule 7024.

In support of the Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Committee is the statutorily appointed representative of, and fiduciary for, all unsecured creditors in the Chapter 11 Cases pending in the Bankruptcy Court.  The Committee actively participated as both a party-in-interest and consultation party in the sale of the Debtors' businesses (the "Sale") to TTAM Research Institute ("TTAM").  The Sale was a success, resulting in at least $302.5 million of proceeds.  The Debtors had no secured debt entering bankruptcy and have now fully paid off their postpetition bankruptcy financing.

1

2.     As a result, the unsecured creditors the Committee represents are the fulcrum creditor constituency, and the remaining Sale proceeds are expected to fund meaningful, if not full, distributions to unsecured creditors through a chapter 11 plan. Absent the Sale, unsecured creditors likely would have received little to no value. The Committee's constituency, therefore, has a significant economic interest in the Appeal.

3.     Given its central role in the bankruptcy proceedings below, the Committee has a direct interest in (i) challenging any attempt (that is not already mooted) to unwind the Sale; and (ii) disputing California's assertion that the Sale is a violation of applicable California state law.

4.     Although not originally identified as an appellee, the Committee is properly a party to this Appeal by statute because it is a specifically identified party in interest pursuant to 11 U.S.C. § 1109(b).

5.     Section 1109(b) of the Bankruptcy Code expressly identifies a "creditors' committee" as a party in interest that has the statutory right to "appear and be heard on any issue."  Such interest does not end when a key matter in the bankruptcy proceedings is appealed.

6.     As the representative of the stakeholders benefiting from the Sale and as an active participant in the Sale process and proceedings below, the Committee is already a proper party to this Appeal.

7.     Alternatively, the Committee should be allowed to intervene in the Appeal pursuant to Bankruptcy Rule 8013(g) and Civil Rule 24 given the unsecured creditors' economic interests in preserving the outcome of the Sale and fostering the distribution of the Sale proceeds.

8.     These interests support two independent grounds for intervention: (i) intervention as of right under either Civil Rule 24(a)(1), because the Committee "is given the unconditional right to intervene by a federal statute" in this case Section 1109(b) of the Bankruptcy Code, or Civil Rule 24(a)(2) because it has a "significantly protectable interest" affected by the Appeal; and (ii) permissive intervention because the Committee has a claim or defense that shares a common question of law or fact with this Appeal.

9.     The Committee should be allowed to intervene in the Appeal because disposing of the Appeal without the Committee could significantly impair the interests of the unsecured creditors that the Committee represents.

## **BACKGROUND**

10.     On March 23, 2025 (the "Petition Date"), the Debtors filed the Chapter 11 Cases in the United States Bankruptcy Court for the Eastern District of Missouri (the "Bankruptcy Court") under chapter 11 of the Bankruptcy Code.  (BK ECF No.

30).[2]  The Debtors commenced bankruptcy to pursue a sale of substantially all of their assets.  (BK ECF No. 30).  The Debtors continue to manage their remaining business as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code following the sale of substantially all of their assets.

11.    On March 28, 2025, the Bankruptcy Court approved bid procedures governing the sale of the Debtors' businesses by entering the *Order (I) Approving Bidding Procedures for the Sale of the Debtors' Assets, (II) Scheduling Certain Dates and Deadlines With Respect Thereto, (III) Approving the Form and Manner of the Notice Thereof, (IV) Approving Procedures Regarding Entry Into Stalking Horse Agreement(s), if Any, (V) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (VI) Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets, and (VII) Granting Related Relief* (the "Bid Procedures Order").  (BK ECF No. 125).

12.    On April 3, 2025, the United States Trustee appointed the Committee pursuant to 11 U.S.C. § 1102(a) to represent the interests of all unsecured creditors in the Chapter 11 Cases.  (BK ECF No. 159). The Debtors' unsecured creditors include trade creditors, data breach claimants, and other litigation creditors.  The

---

[2]    This memorandum refers to docket entries on the bankruptcy docket (Case No. 25-40976) as "BK ECF No."  References to docket entries on this Court's docket are "ECF No."

unsecured creditors represented by the Committee have a significant interest in the outcome of the Sale and the proceeds generated therefrom, which will be used to make distributions to unsecured creditors.  Because the Debtors have no funded secured debt after repayment of their bankruptcy financing, the unsecured creditors are the fulcrum class of creditors in the Chapter 11 Cases.

13.    On June 9, 2025, the People of the State of California ("California") filed an initial objection to the proposed Sale arguing that the Bankruptcy Court should deny Sale approval because the purported transfer of consumer genetic data and biological samples violated California law.  (BK ECF No. 683).

14.    On June 13, 2025, the Debtors filed a notice identifying TTAM as the winning bidder for substantially all of the Debtors' businesses. (BK ECF No. 739).

15.    On June 16, 2025, California filed a supplemental objection to the Sale. (BK ECF No. 769).

16.    Given unsecured creditors' direct and substantial interest in the Sale, on June 17, 2025, the Committee filed the *Statement of the Official Committee of Unsecured Creditors in Support of the Sale* (the "Committee Statement").  (BK ECF No. 779).  The Committee Statement argued that the Sale was appropriate under the Bankruptcy Code and complied with applicable state laws.

17.    The Court held hearings to consider approval of the Sale on June 18 and 20, 2025 (the "Sale Proceedings") during which the Committee participated.

18.     On June 27, 2025, the Bankruptcy Court issued a Memorandum Opinion (BK ECF No. 908) approving the Sale to TTAM and overruling the objections of various parties, including California and the Center for Applied Values and Ethics in Advanced Technologies ("CAVEAT").   On the same date, the Bankruptcy Court entered the *Order (I) Approving (A) the Debtors' Entry Into the Sale Transaction Documents, (B) the Sale to the Purchaser of the Acquired Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, and (C) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (II) Authorizing the Debtors to Consummate Transactions in Connection Therewith; and (III) Granting Related Relief* (the "Sale Order").  (BK ECF No. 910).

19.     On July 3, 2025, California filed a *Notice of Appeal and Statement of Election* appealing the Sale Order.  (BK ECF No. 932).   Contemporaneously, California filed a *Motion for a Stay Pending Appeal* in the Bankruptcy Court (the "California BK Motion to Stay") seeking to stay the Sale with respect to "identifiable California consumers' genetic data and biological samples."  (BK ECF No. 945, ¶ 3).

20.     Also on July 3, CAVEAT filed a *Notice of Appeal and Statement of Election* appealing the Sale Order.  (BK ECF No. 934).  CAVEAT also filed an *Emergency Motion for Stay Pending Appeal* in the Bankruptcy Court (together with the California BK Motion to Stay, the "BK Motions to Stay").

21.    On July 7, 2025, the district court clerk docketed California's and CAVEAT's appeals. Also on July 7, multiple parties, including the Debtors, TTAM, and the Committee filed responses in opposition to the BK Motions to Stay. (BK ECF Nos. 949, 951, 953 and 954). After a hearing on July 7, 2025, the Bankruptcy Court denied the BK Motions to Stay. (BK ECF No. 959).

22.    Following the Bankruptcy Court hearing on July 7, 2025, California filed an *Emergency Motion to Stay Pending Appeal* in this Court (the "DC Motion to Stay"). (ECF No. 8). On July 10, 2025, this Court denied the DC Motion to Stay. (ECF No. 49).

23.    On July 10, 2025, California appealed the denial of the DC Motion to Stay to the Eighth Circuit. (ECF No. 55). On July 11, 2025, CAVEAT also appealed the denial of the DC Motion to Stay to the Eighth Circuit. (ECF No. 60). On July 11, 2025, California and CAVEAT each filed an *Emergency Motion to Stay Pending Appeal* in the Eighth Circuit (the "Circuit Motions to Stay"). On July 11, 2025, the Eighth Circuit denied the Circuit Motions to Stay.

24.    On July 14, 2025, the Debtors closed the Sale to TTAM.

## REQUESTED RELIEF

25.    By the Motion, the Committee respectfully requests the Court enter an order (i) recognizing the Committee as a proper appellee in the Appeal pursuant to 11 U.S.C. § 1109(b) or, in the alternative, (ii) permitting the Committee to intervene

in the Appeal as an appellee, pursuant to Bankruptcy Rule 8013(g) and Civil Rule 24(a) and (b).

26.    The statutory predicates for the relief requested in the Motion are 11 U.S.C. § 1109(b), Fed. R. Bankr. P. 8013(g) and Fed. R. Civ. P. 24(a)(1), (b).

27.    No prior request for the relief sought in the Motion has been made to this or any other court.

## BASIS FOR RELIEF

### A.    The Committee Is Already a Proper Party to this Appeal

28.    Section 1109(b) provides that a creditors' committee is a "party in interest" that "may raise and may appear and be heard on any issue" in a bankruptcy case.  This broad statutory right applies to a sale process under Section 363 of the Bankruptcy Code like the one at issue in this Appeal.  *See In re Bumper Sales, Inc.*, 907 F.2d 1430, 1434 (4th Cir. 1990) (holding that committee had standing to be heard in 363 sale proceeding).

29.    Where, as here, a committee has appeared in the underlying bankruptcy proceedings, courts have held that the committee is also a proper party to any subsequent appeal.  *See, e.g.*, *S. Pac. Transp. Co. v. Voluntary Purchasing Groups, Inc.*, 227 B.R. 788, 793 (E.D. Tex. 1998) (committee had standing as an appellee in appeal of confirmation order); *In re W. Pac. Airlines, Inc.*, 219 B.R. 575, 578 (D.

Colo. 1998) (committee had standing to appeal settlement).[3] The leading bankruptcy treatise supports this common-sense rule that follows logically from the statutory rights granted in Section 1109(b). *See* 7 Collier on Bankruptcy ¶ 1103.05 (16th 2025) ("A committee should also have standing to appeal contested matters in which it has appeared, even if it is not a named or active party in the contested matter.").

30.    Exercising this statutory right to "appear and be heard" as a party in interest, the Committee actively participated in the Sale process and the Sale Proceedings before the Bankruptcy Court. Since its formation on April 3, the Committee (i) worked with the Debtors to foster a robust marketing process; (ii) participated in negotiations with potential bidders; (iii) served as a consultation party under the Bid Procedures Order and participated in the auction; (iv) interfaced with various state attorneys general, the National Association of Attorneys General, and the consumer privacy ombudsman regarding the Sale; (v) filed pleadings in support of the Sale, including the Committee Statement; and (vi) actively participated in the Sale Proceedings and the BK Motions to Stay. No party has objected to the Committee's participation in the Chapter 11 Cases generally or the

---

[3]    Similarly, courts have also allowed other statutory parties in interest (i.e., not a creditors' committee) that appeared in the bankruptcy court to participate in appeals. *See, e.g.*, *In re Glickman, Berkovitz, Levinson & Weiner*, 204 B.R. 450, 453 (E.D. Pa. 1997).

Sale process specifically.  As such, the Committee is a proper party and should be recognized as an appellee in this Appeal.

## B.    The Committee Moves to Intervene Pursuant to Bankruptcy Rule 8013

31.    In the alternative, the Committee should be allowed to intervene in the Appeal pursuant to Bankruptcy Rule 8013(g), which allows an entity to seek leave to intervene in an appeal pending in the district court.  To do so, such entity must file a motion within 30 days after the appeal is docketed.  The movant must concisely set forth (i) the movant's interest; (ii) the grounds for intervention; (iii) whether intervention was sought in the bankruptcy court; (iv) why intervention is being sought at this stage of the proceedings; and (v) why participating as an amicus curiae would not be adequate.  *See* Fed. R. Bankr. P. 8013(g).  Given that the Appeal was docketed in this Court on July 7, 2025, and the Motion was filed on August 4, 2025, the Motion is timely.

### i.    The Committee Has a Direct Interest in the Appeal

32.    Unsecured creditors have a significant protectable interest if they "stand to gain or lose by the direct legal operation" of a judgment in action.  *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991).  The Committee has a direct interest in ensuring that (i) the Sale is upheld; and (ii) the Bankruptcy Court's determination that the Sale does not violate California law is affirmed.

10

33.    The Committee represents the interests of all unsecured creditors in the Chapter 11 Cases, whose recoveries depend upon the $300+ million in Sale proceeds.  *See* 11 U.S.C. §§ 1102, 1103; *Debtors' Opposition to Motions to Stay Sale Order Pending Appeal*, Chapter 11 Cases, BK ECF No. 949 ¶¶ 5, 48-56.  If the Sale to TTAM were overturned, such value could be lost, or significantly diminished, meaning unsecured creditors would receive significantly less than they would if the Debtors prevail in opposing the Appeal.  *See id.* ¶ 52.

34.    Additionally, California and CAVEAT seek a declaration that the Sale violated state law.  Such a determination could have a significant impact on the Chapter 11 Cases, including the possibility that California could assert significant claims against the Debtors and seek to erode value for unsecured creditors.  Affirmance of the Sale Order is critical to unsecured creditor recoveries, demonstrating a direct interest in the outcome of the Appeal.

**ii.    The Grounds for Intervention are Bankruptcy Code Section 1109(b) and Civil Rule 24(a) and (b)**

35.    As discussed in more detail herein, the Committee has two separate grounds for intervention: (1) intervention as of right under Civil Rule 24(a) and Section 1109(b) of the Bankruptcy Code; and (2) permissive intervention under Civil Rule 24(b).

11

### iii.    The Committee Actively Participated in the Proceedings Below

36.    The Committee has a statutory right to "appear and be heard" on any issues in the Debtors' bankruptcy proceedings, including the Section 363 Sale now at issue on appeal.  The Committee, therefore, had no reason to formally intervene in the Bankruptcy Court and actively participated in such proceedings without objection.

### iv.    The Committee Moves to Intervene Now To Protect the Rights of Unsecured Creditors

37.    To the extent necessary and out of an abundance of caution, the Committee is timely seeking to intervene to safeguard the rights of unsecured creditors in connection with the Sale.

### v.    Unsecured Creditors' Interest Would Not Be Protected as an Amicus Curiae

38.    Given the unsecured creditors' substantial monetary interest in the appeal, it would not be possible for the Committee to protect the interests of its constituents as an amicus curiae.

## C.   The Committee Satisfies Civil Rule 24

39.    In considering a motion to intervene under Bankruptcy Rule 8013, courts look to Civil Rule 24, which lays out the standards for intervention as of right and permissive intervention.  *See, e.g.*, *Dist. Theaters, Inc. v. Cinemex Holdings USA, Inc.*, 2022 WL 22903856, at *1 (S.D. Fla. July 22, 2022) ("While Rule 8013(g) gives entities the right to request intervention—and outlines the facts that must be

included in any such request—Rule 24 of the Federal Rules of Civil Procedure governs a court's analysis of that request."). As discussed below, the Committee is a proper intervenor either as of right or permissively under Civil Rule 24.

### i. The Committee Has The Right to Intervene as of Right

40. The Committee should be permitted to intervene in the Appeal as a matter of right. Civil Rule 24(a) allows a party to intervene as of right if the movant "is given an unconditional right to intervene by a federal statute" or "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(1)-(2). The Committee satisfies either requirement.

41. The Court should grant the Committee's request to intervene as of right because, as explained above, Section 1109(b) of the Bankruptcy Code provides a creditors' committee an unconditional right to be heard on any issue or proceeding under chapter 11 of the Bankruptcy Code. *See* 11 U.S.C. § 1109(b).

42. Alternatively, Civil Rule 24(a)(2) provides that a party may intervene if it demonstrates that (i) it has filed a timely motion to intervene; (ii) it has a recognized interest in the subject matter of the litigation; (iii) the interest might be impaired by the disposition of the case; and (iv) the interest is inadequately

13

represented by existing parties.  *See South Dakota ex rel Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 785 (8th Cir. 2003); *Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 975 (8th Cir. 2014).  Civil Rule 24 "should be construed liberally" and all doubts "resolved in favor of the proposed intervenor."  *Nat'l Parks Conservation Ass'n*, 759 F.3d at 975 (*quoting Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)).  As previously discussed, the Committee satisfies each element of the Civil Rule 24(a)(2) standard.

43.    Unsecured creditors' interests in the proceeds of the Sale are a quintessential example of an interest in litigation as contemplated by Civil Rule 24(a)(2).  A movant need only show a "significantly protectable interest" affected by the litigation.  *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (superseded by statute on other grounds).  Such interest is protectable even if it is "contingent upon the outcome of other pending litigation" and "even though the interest may be destroyed by the result of that other litigation."  *See Morgantown Energy Assoc. v. Pub. Serv. Comm'n of W. Va.*, 2013 WL 140235, at *3 (S.D.W.Va. Jan. 10, 2013).

44.    As explained above, the Committee has a recognized interest in the subject matter of the Appeal.  Should the Sale be overturned or determined to have been in violation of California law, unsecured creditors' recoveries in the Chapter 11 Cases will likely be significantly impaired.

14

45.     In assessing the adequacy of unsecured creditor representation by existing parties, the burden on the Committee "should be treated as minimal," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see also J.D. Fields & Company, Inc. v. Nucor-Yamato Steel Company*, 2015 WL 12696208, at *4 (E.D. Ark. June 15, 2015).  This factor can be satisfied even where, as here, parties may be considered to have "aligned," but different, interests.  *J.D. Fields & Company, Inc.*, 2015 WL 12696208, at *4.

46.     The Debtors and TTAM are the other appellees.  While the interests of these appellees are certainly aligned with those of the Committee, neither serves as a direct fiduciary for unsecured creditors.  Such parties are fundamentally concerned with the sanctity of the Sale and the ultimate closing of the Chapter 11 Cases.  The Committee, on the other hand, seeks to obtain the largest possible return for unsecured creditors and to minimize alternative claims to the proceeds of the Sale.  This could mean that the Committee may pursue theories and arguments that are at odds with the Debtors' goals or positions.  For example, the Debtors will not ultimately retain the majority of the financial benefits from the Sale.  Instead, the proceeds from the Sale will likely go to the unsecured creditors pursuant to a plan in the Chapter 11 Cases.  This means the Debtors might consider compromises or concessions that result in reduced payments to unsecured creditors in exchange for a prompter and less expensive resolution of the Appeal.

15

47.     Given the centrality of the Sale proceeds to unsecured creditor recoveries, the Committee, as the statutorily appointed fiduciary for all unsecured creditors, has a compelling interest in this Appeal.  The Court should grant the Motion and ensure that unsecured creditors' voices and perspectives are heard throughout the prosecution of the Appeal.

### ii.     Permissive Intervention is Appropriate

48.     If the Court finds that the Committee may not intervene as a matter of right, then the Court should grant the Committee permissive intervention under Civil Rule 24(b).  To establish that the Court should grant the Motion on permissive intervention grounds, the Committee must: (i) file a timely motion; (ii) demonstrate that it has a claim or defense that shares a common question of law or fact with the main action; and (iii) show that the intervention will not unduly delay or prejudice the adjudication of the original parties' rights.  *See North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012).

49.     As already discussed above, the Committee: (i) timely moved to intervene; (ii) seeks to advocate for the rights of unsecured creditors to safeguard the proceeds of the Sale; and (iii) seeks to intervene for the limited purpose of advocating for unsecured creditors in the Appeal as an appellee.  The Committee does not intend, and has no motivation, to delay the Appeal, which would only serve to harm unsecured creditors.  Instead, the Committee's participation in this Appeal

16

will allow for a more meaningful process and reduce the risk of second-guessing the outcome at a later date in the Chapter 11 Cases.

50.    For these reasons, the Court should exercise its discretion and permit the Committee to intervene and protect the rights of unsecured creditors in the Appeal.

## CONCLUSION

WHEREFORE, the Committee respectfully requests the Court enter an order (1) recognizing that the Committee is a proper appellee to the Appeal; or, in the alternative, (2) permitting the Committee to intervene in the Appeal as an appellee.

Dated: August 4, 2025                Respectfully submitted,

**STINSON LLP**

By: */s/ Nicholas J. Zluticky*
Nicholas J. Zluticky (MO # 61203)
Zachary H. Hemenway (MO # 59670)
Miranda S. Swift (MO # 75782)
1201 Walnut, St. 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 691-3495
Email:        nicholas.zluticky@stinson.com
              zachary.hemenway@stinson.com
              miranda.swift@stinson.com

        -and-

**KELLEY DRYE & WARREN LLP**
Eric R. Wilson (admitted *pro hac vice*)
Jason R. Adams (admitted *pro hac vice*)
Maeghan J. McLoughlin (admitted *pro hac vice*)

17

Steven Yachik (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email:       ewilson@kelleydrye.com
             jadams@kelleydrye.com
             mmcloughlin@kelleydrye.com
             syachik@kelleydrye.com

*Co-Counsel to the Official Committee of
Unsecured Creditors*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. Rule of Bankruptcy Procedure 8013(f)(3)(A) because it contains 3,783 words, excluding the parts of the brief exempted by Federal Rule of Bankruptcy Procedure 8013(a)(2)(C), as determined by the word counting feature of Microsoft Word 2016.

2. This brief complies with the typeface requirements of Federal Rule of Bankruptcy Procedure 8013(f)(2) and the typestyle requirements of Federal Rule of Bankruptcy Procedure 8015(f)(2) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

August 4, 2025

*/s/ Nicholas J. Zluticky*
Co-Counsel for the Committee

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 4, 2025, the foregoing document was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

*/s/ Nicholas J. Zluticky*
Co-Counsel for the Committee