# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>CHROME HOLDING CO. f/k/a 23ANDME HOLDING CO., *et al.*, | Case No. 25-40976-357<br>Chapter 11<br><br>(Jointly Administered) |
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　　　　Appellant,<br><br>v.<br><br>23ANDME HOLDING CO., *d/b/a* VG ACQUISITION CORP.,[1]<br><br>　　　　　　　Appellee. | Case No. 25-cv-0999-MTS<br><br>Hon. Matthew T. Schelp |

## DEBTORS-APPELLEES' BRIEF

---

[1] 23andMe Holding Co. recently changed its name to Chrome Holding Co.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................1

ORAL ARGUMENT ...............................................................................3

STATEMENT OF THE ISSUES..................................................................3

STANDARD OF REVIEW ......................................................................4

STATEMENT OF THE CASE....................................................................4

SUMMARY OF ARGUMENT ..................................................................7

ARGUMENT ........................................................................................8

I.    California Lacks Standing to Pursue Its Appeal............................8

II.   California's Appeal Is Moot Under Section 363(m) ......................9

III.  The Bankruptcy Court Correctly Concluded That the Sale Did Not Violate GIPA ........................................................................................13

V.    The Bankruptcy Court Correctly Held That the Sale Satisfied Section 363(b) ........................................................................................15

CONCLUSION .....................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allen*,
    607 F. App'x 840 (10th Cir. 2015) ....................................................................15

*In re Armstrong*,
    285 F.3d 1092 (8th Cir. 2002) ...........................................................................4

*In re ATP Oil & Gas Corp.*,
    2013 WL 7203750 (Bankr. S.D. Tex. Dec. 19, 2013)........................................15

*In re Burgess*,
    246 B.R. 352 (B.A.P. 8th Cir. 2000) ................................................................10

*In re Capitol Bancorp Ltd.*,
    2009 WL 10816683 (Bankr. E.D. Mich. Mar. 6, 2009) ....................................15

*In re Chrome Holding Co., et al.*,
    No. 25-40976 (Bankr. E.D. Mo. July 7, 2025) ...................................................5

*Crown Cork & Seal Co.* v. *Cont'l Holdings, Inc.*,
    1995 WL 395791 (E.D. Pa. June 30, 1995).......................................................14

*In re Filtercorp, Inc.*,
    163 F.3d 570 (9th Cir. 1998) .............................................................................11

*Humphrey* v. *Christopher*,
    146 F.4th 682 (8th Cir. 2025) .....................................................................2, 4, 9

*Old Cold, LLC*, 558 B.R. 500, 521 (B.A.P. 1st Cir. 2016)....................................11

*In re Papio Keno Club, Inc.*,
    262 F.3d 725 (8th Cir. 2001) ..............................................................................9

*In re Patriot Co.*,
    303 B.R. 811 (B.A.P. 8th Cir. 2004) ...............................................................1, 8

*People of State of California, et al.* v. *23andMe Holding Co.*,
    No. 25-2361 (8th Cir. July 11, 2025)...................................................................5

*In re Peoples*,
764 F.3d 817 (8th Cir. 2014) ...............................................................8

*In re Quaker City Castings*,
Inc., 337 B.R. 729 (B.A.P. 6th Cir. 2005) ........................................11

*In re R.B.B., Inc.*,
211 F.3d 475 (9th Cir. 2000) .............................................................10

*Matter of RE Palm Springs II, L.L.C.*,
106 F.4th 406 (5th Cir. 2024) ............................................................15

*In re RE Palm Springs II, LLC*,
2021 WL 5331001 (N.D. Tex. Nov. 15, 2021) ..................................13

*In re Reg'l Evangelical All. of Churches, Inc.*,
592 B.R. 375 (Bankr. D. Kan. 2018)..................................................12

*In re Rodriquez*,
258 F.3d 757 (8th Cir. 2001) .............................................................11

*In re TMT Procurement Corp.*,
764 F.3d 512 (5th Cir. 2014) ...............................................................3

*In re Trism, Inc.*,
328 F.3d 1003 (8th Cir. 2003) ...........................................................11

*Wesco Aircraft Holdings, Inc.*, 2025 WL 354858, at *21 (Bankr. S.D.
Tex. Jan. 15, 2025)..............................................................................14

*In re White Crane Trading Co.*,
170 B.R. 694 (Bankr. E.D. Cal. 1994)................................................12

**Statutes**

11 U.S. Code § 363(m) ......................................................................*passim*

Cal. Civ. Code § 56.181(a)(2)(D) ...................................................*passim*

**Other Authorities**

Federal Rule of Bankruptcy Procedure 2018(b) ...................................8, 9

## PRELIMINARY STATEMENT

California[1] seeks to unwind a $302.5 million sale of the Debtors' assets to TTAM in a transaction that closed nearly three months ago, after the Bankruptcy Court carefully considered and approved that transaction in a thoughtful 38-page opinion following a two-day hearing.  In seeking that incredible relief, California merely recycles the same arguments the Bankruptcy Court already rejected, and that this Court and the Eighth Circuit already found did not justify a stay.  California offers no new argument that has not previously been considered and rejected by multiple courts, and the Bankruptcy Court should be affirmed.

*First*, California lacks standing to pursue this appeal.  The Eighth Circuit repeatedly has held that a creditor lacks standing unless it has been "directly and adversely affected pecuniarily" by the order from which it seeks to appeal.  *In re Patriot Co.*, 303 B.R. 811, 815 (B.A.P. 8th Cir. 2004).  There is no dispute that the $302.5 million sale represented the highest and best offer for the Debtors' assets.  Far from being "adversely affected pecuniarily" by the Sale Order, the Sale pecuniarily **benefits** the Debtors' creditors who will recover from the proceeds of the Sale.  Indeed, should the Sale be unwound as California urges, the Debtors may

---

[1]    Capitalized terms used herein have the meanings given to them in Appendix A attached hereto.

1

face the prospect of liquidation, and a loss of control over the genetic data about which California purports to be concerned.

*Second*, this appeal should be dismissed as moot under section 363(m) of the Bankruptcy Code, which precludes reversal or modification on appeal of a sale order that would affect the validity of a sale to a good-faith purchaser.  Because California failed to obtain a stay—indeed, after three different courts denied its requests for one—section 363(m) bars its appeal because it "operates to statutorily moot reversal of a non-stayed completed sale." *Humphrey* v. *Christopher*, 146 F.4th 682, 690 (8th Cir. 2025).  Attempting to evade the obvious mootness of this appeal, California asserts that the Bankruptcy Court somehow clearly erred in finding that the purchasers acted in "good faith."  A lack of good faith, however, requires a showing of misconduct, fraud, or collusion.  Any suggestion by California that the Sale— which was overseen by the Bankruptcy Court and supported, or uncontested, by numerous stakeholders, including dozens of states with similar statutes as California—even approached fraud or misconduct is frivolous.   California's assertion that the Sale was a "gambit" to evade state law ignores the fact that, as the Bankruptcy Court already found, the Sale did not violate state law.

*Third*, the Bankruptcy Court's ruling that California's GIPA—which requires consumers' express consent for "[e]ach transfer or disclosure of the consumer's genetic data" to "a third party," Cal. Civ. Code § 56.181(a)(2)(D)—does not apply

2

to the transaction here should be affirmed.  The Sale involved the transfer of assets to a wholly owned subsidiary of the Debtors (which is not a "third party" under GIPA) followed by a sale of the equity of that subsidiary to TTAM (which involved a transfer of stock, not "genetic data").  The Court already correctly "agree[d] with Judge Walsh's thoughtful, textual consideration and conclusion that California's Genetic Information Privacy Act, GIPA, would not be violated by the sale as constructed."  Dkt. No. 57 at 44:8–11.

*Finally*, California fails to provide any support for the notion that the Sale was an "improper use" of section 363 or could only be accomplished through a Chapter 11 plan.

## ORAL ARGUMENT

Debtors request oral argument.

## STATEMENT OF THE ISSUES

This appeal presents four questions:

1.    Does California lack standing to appeal the Sale Order?

2.    Is California's appeal moot under section 363(m)?

3.    Did the Bankruptcy Court correctly hold that the Sale did not violate GIPA?

4.    Did the Bankruptcy Court correctly hold that the Sale satisfied section 363(b)?

## STANDARD OF REVIEW

The Court reviews the Bankruptcy Court's "finding of good faith" under section 363(m) for clear error. *See In re Armstrong*, 285 F.3d 1092, 1096 (8th Cir. 2002). The Court reviews questions of law *de novo*. *See Humphrey* v. *Christopher*, 146 F.4th 682, 687 (8th Cir. 2025).

## STATEMENT OF THE CASE

The Bankruptcy Court approved the Sale on June 27 in a carefully reasoned 38-page opinion, after receiving hundreds of pages of briefing, documentary evidence, and testimony from nine witnesses over a two-day evidentiary hearing. ER 2082–119[2]; ER 2123–299. The Sale is an incredible outcome for the Debtors' stakeholders. It generated $302.5 million[3] in proceeds, now available to repay the Debtors' creditors (including millions of the Debtors' customers in California and other states throughout the country), and may even result in recoveries for the Debtors' stockholders under a proposed Chapter 11 plan that the Debtors anticipate

---

[2]    Citations to "ER" are to California's Appendix. *See* Dkt. No. 80-1. Citations to "DER" are to the Debtors' Appendix.

[3]    TTAM agreed to a $302.5 million purchase price, and that TTAM would purchase the Debtors' Lemonaid telehealth business for an additional $2.5 million pursuant to a Chapter 11 plan, which was subject to a provision allowing Debtors to accept a higher and better offer. ER 2204; ER 2242–43. Debtors received a higher and better offer for their Lemonaid telehealth assets from another party, which TTAM did not match. Thus, the Sale's final purchase price was $302.5 million. ER 2204.

the Bankruptcy Court will consider at a hearing on November 19, 2025.  The Sale also ensured that genetic data would remain under the control of the Debtors' pre-bankruptcy management and that it would be subject to *even greater* privacy protections than customers received prior to the Sale.  ER 2282–86.

The Sale closed on July 14 after California's applications to stay the Sale Order were denied by the Bankruptcy Court, Order Denying Stay, *In re Chrome Holding Co., et al.*, No. 25-40976 (Bankr. E.D. Mo. July 7, 2025), Dkt. No. 959; this Court, Dkt. No. 49; and the Eighth Circuit, Order Denying Stay, *People of State of California, et al.* v. *23andMe Holding Co.*, No. 25-2361 (8th Cir. July 11, 2025). TTAM now owns and operates the business previously operated by the Debtors.

The success of the Sale was the product of a careful, arm's-length process developed by the Debtors and overseen by the Bankruptcy Court.  On March 28, 2024, the Debtors established a Special Committee of its Board of Directors comprised of independent and disinterested directors to evaluate and negotiate any potential sale of the Debtors' assets.  ER 1408–09.  The Special Committee retained and relied on independent advisers in conducting its work.  ER 1409–11.

The evidence shows that the Special Committee discharged its responsibilities independently and ultimately generated a $302.5 million bid that was far and away the highest available price for the Debtors' assets.  The Special Committee, for example, declined to accept a pre-petition, $50 million offer from Ms. Anne

Wojcicki, the Debtors' former CEO and founder, as well as the founder of TTAM, opting instead to commence a sale under section 363 to optimize recoveries for the Debtors' stakeholders in a Chapter 11 proceeding. ER 1356. Following their Chapter 11 filing, the Debtors contacted 103 potential counterparties, and garnered 32 indications-of-interest before holding a highly competitive initial auction from May 14–16, 2025. ER 1334–35; DER 6–10. Following that auction, the Special Committee selected Regeneron as the winning bidder with a purchase price of $256 million—over a competing bid from TTAM. ER 540. TTAM then sought to submit a higher bid and reopen the auction, even accusing the Debtors of "tilt[ing] the sale process *away from* TTAM and in favor of [Debtors'] *preferred bidder*, Regeneron . . . ." DER 20 ¶ 2 (emphasis added). After the auction was reopened and a new bidding round was held on June 13, the Special Committee selected TTAM as the winning bidder, ER 978–1312, and the Sale was approved by the Bankruptcy Court on June 27, ER 2123–299.

While California criticizes the structure of the Sale as a "gambit," California omits the facts as to how the transaction structure came about. App. Br. at 10. Far from an effort to "sidestep" state law, *id.* at 4, the Sale was structured as a two-step transaction to **comply** with state law at the urging of California's sister states. Prior to the Sale Hearing, attorneys general from 34 states objected to the Sale, including California, arguing that the Sale would violate their respective privacy statutes.

Many states—with GIPA statutes substantively identical to California—acknowledged that if structured as an equity sale, rather than an asset sale, the Sale would be "legally permissible." *See, e.g.*, ER 1505; DER 392 ¶ 38. To resolve those states' objections, the Debtors exercised the Equity Sale Toggle in the TTAM APA, which allowed the Debtors to structure the transaction as a sale to TTAM of the equity in a Debtor subsidiary. ER 1313–16; ER 1379–80; ER 1504–05 at 39:9–40:14; ER 1536–37 at 71:3–72:6; ER 1670 at 205:3–9; ER 1943–44 at 258:23–59:14; ER 1969–70 at 284:15–85:1. Recognizing that such a transaction did not violate state law, 29 of the objecting states declined to pursue their objections at the Sale Hearing.

Upon the exercise of the Equity Sale Toggle, the Debtors formed NewCo, a new, wholly owned subsidiary, and the Sale was consummated in two steps: Debtors (1) sold the Acquired Assets to NewCo; and (2) sold NewCo's equity to TTAM. *See* ER 2288–91; Dkt. No. 35-4 at 25–29.

## SUMMARY OF ARGUMENT

The Court should dismiss this appeal because California lacks standing and as moot under section 363(m). Should the Court reach the merits, it should affirm the Sale Order because the Bankruptcy Court correctly determined that the Sale did not violate GIPA and that the Sale was appropriate under section 363(b).

## ARGUMENT

### I.    California Lacks Standing to Pursue Its Appeal

California fails to satisfy the clear Eighth Circuit standard for standing to appeal a bankruptcy court order:  the person aggrieved must be "directly and *adversely affected pecuniarily* by the order."  *In re Patriot Co.*, 303 B.R. at 815 (emphasis added); *see In re Peoples*, 764 F.3d 817, 820 (8th Cir. 2014) (recognizing that "standing in a bankruptcy appeal is narrower than Article III standing").  The Bankruptcy Court found that the Sale generates a "very large sum of money that may be sufficient to compensate all of the company's creditors . . . ."  ER 2119. California nowhere challenges these and other findings of the Bankruptcy Court establishing the extensive benefits to creditors of the Sale.  It makes no effort to show—and cannot show—that reversal of the Sale Order would make California (or other creditors) *financially* better off.  California accordingly lacks standing, as the Court already recognized in denying its motion to stay and concluding that California "failed to show that it is 'adversely affected pecuniarily by the order.'" Dkt. No. 57 at 43:23–25.

California also lacks standing for the independent reason that its appeal is barred by Federal Rule of Bankruptcy Procedure 2018(b).  California repeatedly acknowledged that it sought to block the Sale on behalf of California consumers. ER 759–60 ¶¶ 1–3; ER 1317–18 ¶¶ 1–2, 4; Motion to Stay ¶ 30, *In re Chrome*

*Holding Co., et al.*, No. 25-40976, Dkt. No. 945; App. Br. at 1.   In those circumstances, Rule 2018(b) is clear that "the Attorney General may not appeal from any judgment, order or decree in the case."  Fed. R. Bankr. P. 2018(b).

## II.   California's Appeal Is Moot Under Section 363(m)

The Bankruptcy Court correctly concluded that TTAM and NewCo were "good-faith purchaser[s] within the meaning of section 363(m) of the Bankruptcy Code" and accordingly are "entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code."   ER 2133.   Section 363(m) protects the expectations of good-faith purchasers against the unwinding of an approved and consummated sale by "statutorily moot[ing] reversal of a non-stayed completed sale." *Humphrey*, 146 F.4th at 690.  Recognizing section 363(m)'s mootness bar to its appeal, App. Br. at 6–7, California wrongly asserts that the Bankruptcy Court erred in affording TTAM and NewCo a good-faith finding.  But California fails to show any error, let alone one that could strike a court "as wrong with the force of a five-week old, unrefrigerated dead fish." *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir. 2001) (citation modified).

The Bankruptcy Court's good-faith findings are amply supported by the evidentiary record, which demonstrated that the Sale was the result of a competitive bidding process subject to careful procedures ordered by the Bankruptcy Court and the work of an independent Special Committee that generated a $302.5 million

purchase price—$250.5 million higher than the opening auction bid of $52 million. ER 1411–12; ER 2290.

California makes no meaningful effort to show clear error or even to identify any conduct that could support a lack of good faith.  The "requisite misconduct necessary to establish a lack of good faith involves fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders."  *In re Burgess*, 246 B.R. 352, 356 (B.A.P. 8th Cir. 2000) (citation modified).  California fails to mention this well-established standard and cannot identify any such supposed misconduct in connection with a sales process carefully overseen by the Bankruptcy Court that garnered the support of nearly every major constituency of the Debtors.  California's makeweight arguments are meritless:

*First*, California claims that because the Sale Order defines "Purchaser" to include both TTAM and NewCo, it is somehow "ambiguous" enough to warrant reversal of the good-faith findings.  California offers no support for the incredible proposition that the use of defined terms in a sale order permit it to evade section 363(m).  The lone case cited by California, *see* App. Br. at 7, is entirely inapposite and involved an assignment and sale that failed to specify the assignee while leaving the appellate court unable to conclude whether the appropriate legal framework was applied to the transaction.  *See In re R.B.B., Inc.*, 211 F.3d 475, 479–80 (9th Cir. 2000).

10

*Second*, it is not the law that a purchaser must be a third party as a "precondition" to good-faith protection. To the contrary, section 363(m)'s protections are available to third parties *and* insiders. *See, e.g.*, 11 U.S.C. § 363(m) (affording protection "to an entity that purchased"); *In re Filtercorp, Inc.*, 163 F.3d 570, 577 (9th Cir. 1998) (dismissing appeal under section 363(m) as to insider-purchaser); *Old Cold, LLC*, 558 B.R. 500, 521 (B.A.P. 1st Cir. 2016) (same); *In re Quaker City Castings*, Inc., 337 B.R. 729 (B.A.P. 6th Cir. 2005) (similar). None of the cases cited by California, which merely observe that section 363(m) protects third parties, support the proposition that section 363(m) protects *only* third parties.[4]

*Third*, California is wrong that the Bankruptcy Court merely "assumed" NewCo's good faith. The Bankruptcy Court heard and considered evidence as to why NewCo was established, its purpose in the transaction, and the fair consideration provided by NewCo to Debtors in the form of a promissory note. *See* ER 1313–16; ER 1504–05 at 39:14–40:11; ER 1536 at 71:3–16; ER 1670 at 205:3–9; ER 1943–44 at 258:23–59:14; ER 1969–70 at 284:15–85:1; DER 16–17 ¶ 37.

---

[4]     California cites *In re Trism, Inc.*, 328 F.3d 1003, 1006 (8th Cir. 2003), and *In re Rodriquez*, 258 F.3d 757, 759 (8th Cir. 2001) for the proposition that "Section 363(m) protects the reasonable expectations of good faith third-party purchasers." App. Br. at 8. True enough, but neither case holds—as California incorrectly argues—that section 363(m)'s protections are ***limited*** to third parties.

California identifies **no conduct** by NewCo that remotely approaches the type of fraud or collusion that could support a finding of a lack of good faith.

*Fourth*, California incredibly asserts that TTAM is not entitled to a good-faith finding because it participated in a "gambit" to structure the Sale as an equity sale to "evade state law."  App. Br. at 10.  California's argument is entirely backwards.  The Bankruptcy Court concluded that the Sale did **not** violate GIPA.  California cannot evade section 363(m) by claiming a lack of good faith based on California's (erroneous) position that the Sale should not have been approved.[5]  Were that the law, section 363(m) would be a nullity.  What's more, the evidence showed that, far from a "gambit," the transaction structure directly resulted from California's sister states' encouragement to consummate the transaction as an equity sale so as to **comply with** state law.

*Finally*, California misconstrues the law in arguing that TTAM is not entitled to good-faith protection because it "purchased these assets with knowledge of adverse claims" in the form of California's supposed claims that the sale violated GIPA.  App. Br. at 10–11 (citation modified).  But the Bankruptcy Court's rulings

---

[5]    Neither case cited by California supports its argument.  App. Br. at 10 (citing *In re White Crane Trading Co.*, 170 B.R. 694, 705 (Bankr. E.D. Cal. 1994); *In re Reg'l Evangelical All. of Churches, Inc.*, 592 B.R. 375, 384 (Bankr. D. Kan. 2018)).  In *White Crane*, the court found bad faith due to the debtor's fraud on the court.  *See* 170 B.R. at 699, 705.  In *Evangelical*, there was no section 363 sale, only a bad-faith bankruptcy filing to evade a court order.  *See* 592 B.R. at 386.

foreclosed any such adverse claims by concluding that the Sale did not violate GIPA. And, in any event, "knowledge of an adverse claim requires something more" than "knowledge that there are objections to the transaction." *E.g.*, *In re TMT Procurement Corp.*, 764 F.3d 512, 522 (5th Cir. 2014); *see also In re RE Palm Springs II, LLC*, 2021 WL 5331001, at *3 (N.D. Tex. Nov. 15, 2021).

## III.   The Bankruptcy Court Correctly Concluded That the Sale Did Not Violate GIPA

As this Court already recognized, *see* Dkt. No. 57 at 44:9–13, the Bankruptcy Court thoughtfully analyzed GIPA's text and correctly concluded that GIPA was not violated by the Sale as constructed. That is because GIPA governs only the "transfer or disclosure of the consumer's *genetic data*" to "a *third party*." Cal. Civ. Code § 56.181(a)(2)(D) (emphasis added). Here, GIPA's plain text "does not prohibit a change of ownership of or a sale of equity in a direct-to-consumer testing company." Dkt. No. 57 at 44:9–13. That is because the sale of genetic data from a genetic testing company to an affiliate (such as the sale of assets from the Debtors to NewCo) does not involve a transfer to a "third party," ER 2106–07; and the sale of equity (such as the sale of equity from NewCo to TTAM) does not involve a transfer of genetic data, ER 2101.

California's recycled arguments to the contrary remain meritless. Without support, California again argues that a "third party" under GIPA must include affiliates or subsidiaries. The law is to the contrary. *See, e.g.*, *Wesco Aircraft*

*Holdings, Inc.*, 2025 WL 354858, at *21 (Bankr. S.D. Tex. Jan. 15, 2025) ("[I]n common legal writings, the term 'third party' is uniformly used in a manner that excludes 'affiliates.'"); *Crown Cork & Seal Co.* v. *Cont'l Holdings, Inc.*, 1995 WL 395791, at *3 (E.D. Pa. June 30, 1995) ("[S]ubsidiaries technically are not 'third parties.'").  Indeed, California cites no case from any jurisdiction in which a court has similarly interpreted "third party" to encompass a company's affiliates.  And far from reaching an "extra-textual" interpretation, the Bankruptcy Court instead interpreted the statute using well-accepted canons of statutory construction and correctly concluded that "third party" does *not* reach subsidiaries or affiliates.  ER 2102–05.  That conclusion was bolstered by the Bankruptcy Court's interpretation of the ordinary, common meaning of "third party," *see* ER 2102, 2106, a litany of absurd results that would follow by adopting California's interpretation, ER 2104–05, and intra-statute conflicts that would be imposed by California's reading, ER 2106–07.  California fails to grapple with any of the Bankruptcy Court's actual reasoning, instead merely asserting that California's reading is "unambiguous" and falsely stating that the Bankruptcy Court "relied exclusively" on a single case.  App. Br. at 14 n.4.

## V.    The Bankruptcy Court Correctly Held That the Sale Satisfied Section 363(b)

California finally argues that the Sale was somehow an "improper" use of section 363 because it was supposedly a "complex transaction," not a "straightforward asset sale."  App. Br. at 11.  But California identifies nothing in section 363(b)—which broadly authorizes, after notice and a hearing, the "use, [sale], or lease" of debtors' property "other than in the ordinary course of business"—that presents any impediment to the Sale.  Nor does California cite any case even suggesting that section 363 does not permit a sale of substantially all of a debtor's assets, whether to a subsidiary or otherwise.  In fact, courts routinely approve under section 363(b) equity sales, *see, e.g.*, *In re Allen*, 607 F. App'x 840, 844 (10th Cir. 2015); *In re Capitol Bancorp Ltd.*, 2009 WL 10816683, at *1 (Bankr. E.D. Mich. Mar. 6, 2009); *In re ATP Oil & Gas Corp.*, 2013 WL 7203750, at *3 (Bankr. S.D. Tex. Dec. 19, 2013), and sales by debtors to affiliates, *see, e.g.*, *Matter of RE Palm Springs II, L.L.C.*, 106 F.4th 406, 411 (5th Cir. 2024).

## <u>CONCLUSION</u>

The Debtors respectfully request that the Court affirm the Sale Order.

Dated: October 6, 2025
St. Louis, Missouri

Respectfully submitted,

**Carmody MacDonald P.C.**
*/s/ Thomas H. Riske*
Thomas H. Riske #61838MO
Nathan R. Wallace #74890MO
Jackson J. Gilkey #73716MO
120 S. Central Avenue, Suite 1800
St. Louis, Missouri 63105
Telephone:  (314) 854-8600
Facsimile:  (314) 854-8660
Email:        thr@carmodymacdonald.com
                nrw@carmodymacdonald.com
                jjg@carmodymacdonald.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (*pro hac vice* forthcoming)
Christopher Hopkins (admitted *pro hac vice*)
William A. Clareman (admitted *pro hac vice*)
Jeffrey J. Recher (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:        pbasta@paulweiss.com
                chopkins@paulweiss.com
                wclareman@paulweiss.com
                jrecher@paulweiss.com

*Counsel to the Debtors-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the page-length requirements in the Court's Case Management Order, paragraph 6, because the brief does not exceed 15 pages. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document is proportionately spaced, has a typeface of 14 points or more, and was prepared using Microsoft Word 365.


Dated: St. Louis, Missouri
    October 6, 2025            */s/ Thomas H. Riske*
                              Thomas H. Riske #61838MO
                              120 S. Central Avenue, Suite 1800
                              St. Louis, Missouri 63105
                              Telephone:  (314) 854-8600
                              Facsimile:  (314) 854-8660
                              Email:      thr@carmodymacdonald.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th of October, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court and served on all counsel of record through the Court's CM/ECF system.

Dated: St. Louis, Missouri
     October 6, 2025          */s/ Thomas H. Riske*
                     Thomas H. Riske #61838MO
                     120 S. Central Avenue, Suite 1800
                     St. Louis, Missouri 63105
                     Telephone:  (314) 854-8600
                     Facsimile:   (314) 854-8660
                     Email:        thr@carmodymacdonald.com

## Appendix A

### Glossary of Defined Terms

| Term | Definition |
| --- | --- |
| Acquired Assets | The Debtors' assets that TTAM has agreed to purchase under the TTAM APA, which include (i) all of the customer data in the Debtors' possession, including genetic data, (ii) contracts proposed to be assumed by the Debtors and assigned to TTAM in connection with the sale, and (iii) certain of the Debtors' intellectual property. |
| App. Br. | The People of the State of California's Appeal Brief, Dkt. No. 80. |
| Bankruptcy Code | Title 11 of the United States Code. |
| Bankruptcy Court | The United States Bankruptcy Court for the Eastern District of Missouri. |
| California | Appellant, the People of the State of California. |
| Debtors | Chrome Holding Co., ChromeCo, Inc., Chrome Pharmacy Holdings, Inc., Lemonaid Community Pharmacy, Inc., Lemonaid Health, Inc., Lemonaid Pharmacy Holdings Inc., LPharm CS LLC, LPharm INS LLC, LPharm RX LLC, LPRXOne LLC, LPRXThree LLC, and LPRXTwo LLC. |
| Debtor HoldCo | The Debtor entity that owns 100% of the equity interests of NewCo. |
| Equity Sale Toggle | An option provided for by the TTAM APA that allowed the Debtors to elect to consummate the Sale through an equity sale. |
| | The Debtors filed a notice with the Bankruptcy Court on June 14, 2025 disclosing their decision to proceed with the Equity Sale Toggle structure |

after several states, which initially objected to the Sale, argued that such transaction structure would comply with their state laws.   ER 1313–16.

Pursuant to the Equity Sale Toggle, the Debtors sold substantially all of the Acquired Assets and transfered substantially all of the Assumed Liabilities to NewCo and then Debtor HoldCo sold 100% of its equity interests in NewCo to TTAM.  ER 2203–04.

The Equity Sale Toggle was included in both versions of the TTAM APA filed with the Bankruptcy Court on May 19, 2025 and June 13, 2025, respectively.  ER 672–73.

TTAM agreed to provide the Privacy Enhancements if the Sale was consummated through the Equity Sale Toggle structure.  ER 2238–39.

| | |
|---|---|
| GIPA | California's Genetic Information Privacy Act, codified at Cal. Civ. Code §§ 56.18–56.186. |
| NewCo | A wholly owned subsidiary of Debtor HoldCo, formed pursuant to paragraph 7 of the Sale Order and with the Court's express authorization to effectuate the Sale. |
| Privacy Enhancements | Certain additional privacy protections that TTAM has agreed to provide for the benefit of the Debtors' customers, including TTAM's agreement to (i) comply with applicable laws, even if it otherwise might be excused from complying with such laws because of its status as a non-profit, (ii) not to share personal information with insurance companies, (iii) form an independent consumer privacy advisory board, and (iv) provide consumers with two years of identity-theft monitoring.  ER 2282–85. |
| | TTAM has agreed to provide the Privacy Enhancements only in the event the Sale is consummated under section 363 of the Bankruptcy Code. ER 2238–39. |
| | The Privacy Enhancements are listed on Exhibit D to the TTAM APA.  ER 2282–85. |

| | |
|---|---|
| Regeneron | Regeneron Pharmaceuticals, Inc., who the Debtors selected as the backup bidder, with a bid of $151 million. ER 979–80. |
| Sale Hearing | The two-day hearing before the Bankruptcy Court, occurring on June 18 and 20, 2025, during which the Bankruptcy Court heard extensive argument and after which the Bankruptcy Court approved the Sale. |
| Sale Order | Order (I) Approving (A) the Debtors' Entry into the Sale Transaction Documents, (B) the Sale to the Purchaser of the Acquired Assets Free and Clear of all Liens, Claims, Interests, and Encumbrances, and (C) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (II) Authorizing the Debtors to Consummate Transactions in Connection Therewith; and (III) Granting Related Relief, *In re Chrome Holding Co., et al.*, No. 25-40976, Dkt. No. 910, ER 2123–2299. |
| TTAM | 23andMe Research Institute, formerly known as TTAM Research Institute, who the Debtors selected as the winning bidder, with a  bid of $302.5 million.  TTAM's principal, Anne Wojcicki, is a co-founder of 23andMe, a current director, and, until the filing of the chapter 11 proceedings, was the company's chief executive officer, controlling shareholder, and chair of the board of directors. |
| | TTAM recently changed its name to 23andMe Research Institute.  Dkt. No. 72.  For continuity with the proceedings at the Bankruptcy Court, this brief refers to this entity as TTAM. |
| TTAM APA | The asset purchase agreement governing the Sale.  ER 2171–287. |
| Sale | A sale of the Debtors' assets to TTAM pursuant to the TTAM APA, which generates $302.5 million in value for the Debtors' estates, and which closed on July 14, 2025. |