# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>23ANDME HOLDING CO., *et al.*,<br><br>        *Debtors.* | Bankr. Case No. 25-40976-357<br>Chapter 11<br><br>(Jointly Administered) |
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>        *Appellant*,<br><br>   v.<br><br>23ANDME HOLDING CO., *et al.*,<br><br>        *Appellees.* | Case No.: 4:25-cv-00999-MTS<br><br>Hon. Matthew T. Schelp |

## THE PEOPLE OF THE STATE OF CALIFORNIA'S
## <u>REPLY BRIEF</u>

# TABLE OF CONTENTS

I.      The People Have Standing to Appeal .....................................................3

II.     This Appeal Is Not Moot..........................................................................6

III.    Neither NewCo Nor TTAM Purchased in Good Faith .........................7

IV.     The Sale Order Violated the Bankruptcy Code...................................11

    A.      The Sale Order Is Not Authorized Under § 363 ......................11

    B.      The Sale Order Does Not Comply With GIPA ........................13

V.      Conclusion.............................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*
458 U.S. 592 (1982)...................................................................................5

*Beech Aircraft Corp. v. Rainey*
488 U.S. 153 (1988)...................................................................................11

*California v. ARC Am. Corp.*
490 U.S. 93 (1989)....................................................................................10

*Crown Cork & Seal Co. v. Cont'l Holdings, Inc.*
No. 93-06563, 1995 WL 395791 (E.D. Pa. June 30, 1995) ..............................14

*Czyzewski v. Jevic Holding Corp.*
580 U.S. 451 (2017)...................................................................................12

*Exec. Benefits Ins. Agency v. Arkison*
573 U.S. 25 (2014).....................................................................................1

*Gelb v. Royal Globe Ins. Co.*
798 F.2d 38 (2d Cir. 1986) ...........................................................................1

*Gillis v. California*
293 U.S. 62 (1934).....................................................................................5

*Gregory v. Helvering*
293 U.S. 465 (1935)...................................................................................15

*Harrington v. Purdue Pharma L. P.*
603 U.S. 204 (2024)...................................................................................12

*Hartman v. Workman*
476 F.3d 633 (8th Cir. 2007) ........................................................................3

*Humphrey v. Christopher*
146 F.4th 682 (8th Cir. 2025) ........................................................................9

*In re Ashford Hotels, Ltd.*
235 B.R. 734 (S.D.N.Y. 1999) ......................................................................4

*In re Bel Air Assocs., Ltd.*
706 F.2d 301 (10th Cir. 1983) ...............................................................7

*In re Borders Grp., Inc.*
453 B.R. 477 (Bankr. S.D.N.Y. 2011) ...................................................8

*In re Braniff Airways, Inc.*
700 F.2d 935 (5th Cir. 1983) ...............................................................12

*In re DBSD N. Am., Inc.*
634 F.3d 79 (2d Cir. 2011) .................................................................4, 5

*In re Gucci*
126 F.3d 380 (2d Cir. 1997) ...............................................................7, 8

*In re Highland Cap. Mgmt., L.P.*
74 F.4th 361 (5th Cir. 2023) ..................................................................4

*In re Jencks*
671 B.R. 252 (B.A.P. 8th Cir. 2025) .....................................................8

*In re Levitt*
632 B.R. 527 (B.A.P. 8th Cir. 2021) .....................................................5

*In re Lionel Corp.*
722 F.2d 1063 (2d Cir. 1983) ..............................................................13

*In re M Capital Corp.*
290 B.R. 743 (B.A.P. 9th Cir. 2003) .....................................................7

*In re Papio Keno Club, Inc.*
262 F.3d 725 (8th Cir. 2001) ...............................................................11

*In re Patriot Co.*
303 B.R. 811 (B.A.P. 8th Cir. 2004) .....................................................4

*In re Paulson*
276 F.3d 389 (8th Cir. 2002) .................................................................9

*In re Peoples*
764 F.3d 817 (8th Cir. 2014) .................................................................4

*In re Purdue Pharma, L.P.*
635 B.R. 26 (S.D.N.Y. 2021) ...............................................................6

*In re R.B.B., Inc.*
211 F.3d 475 (9th Cir. 2000) ...............................................................8

*In re Revco D.S., Inc.*
898 F.2d 498 (6th Cir. 1990) ...............................................................5

*In re Rodriquez*
258 F.3d 757 (8th Cir. 2001) ...............................................................9

*In re Sax*
796 F.2d 994 (7th Cir. 1986) ...............................................................7

*In re Schauer*
835 F.2d 1222 (8th Cir. 1987) ........................................................3, 13

*In re Stanford*
17 F.4th 116 (11th Cir. 2021) ...............................................................6

*In re Tempo Tech. Corp.*
202 B.R. 363 (D. Del. 1996) ...............................................................6

*In re TMT Procurement Corp.*
764 F.3d 512 (5th Cir. 2014) .............................................................10

*In re Trism, Inc.*
328 F.3d 1003 (8th Cir. 2003) ...............................................................9

*In re U.S. Med., Inc.*
531 F.3d 1272 (10th Cir. 2008) ...............................................................9

*In re Wesco Aircraft Holdings, Inc.*
No. 23-03091, 2025 WL 354858 (Bankr. S.D. Tex. Jan. 15, 2025) .................14

*In re White Crane Trading Co., Inc.*
170 B.R. 694 (Bankr. E.D. Cal. 1994).................................................1

*In re Wigley*
886 F.3d 681 (8th Cir. 2018) ...............................................................5

*In re Wintz Companies*
219 F.3d 807 (8th Cir. 2000) ..................................................................9

*In re Zarnel*
619 F.3d 156 (2d Cir. 2010) ...................................................................5

*Jasperson v. Purolator Courier Corp.*
765 F.2d 736 (8th Cir. 1985) ..................................................................2

*Kane v. Johns-Manville Corp.*
843 F.2d 636 (2d Cir. 1988) ...................................................................4

*Kight v. CashCall, Inc.*
200 Cal. App. 4th 1377 (2001) .............................................................14

*Law v. Siegel*
471 U.S. 415 (2014)..............................................................................12

*MOAC Mall Holdings v. Transform Holdco*
598 U.S. 288 (2023)........................................................................*passim*

*Norwest Bank Worthington v. Ahlers*
485 U.S. 197 (1988)..............................................................................12

*Opportunity Fin., LLC v. Kelley*
822 F.3d 451 (8th Cir. 2016) ..................................................................5

*Schwab v. Reilly*
560 U.S. 770 (2010)..............................................................................12

*Wesco Aircraft Holdings, Inc. v SSD Inv. Ltd.*
No. 25-00202 (S.D. Tex. Jan. 16, 2025)...............................................14

*Willemain v. Kivitz*
764 F.2d 1019 (4th Cir. 1985) ................................................................7

**STATUTES**

11 U.S.C. § 363 ...............................................................................*passim*

11 U.S.C. § 1123 ..................................................................................12

28 U.S.C. § 959 .....................................................................................5

Cal. Civ. Code § 2223 ........................................................................10

Cal. Civ. Code § 2224 ........................................................................10

Cal. Civ. Code § 56.181 .....................................................................13

**CONSTITUTIONAL PROVISIONS**

Cal. Const. art. V, § 13 .......................................................................3

**COURT RULES**

Fed. R. Bankr. P. 2018 ........................................................................6

It is undisputed that the bankruptcy court's sale order deprived 1.8 million Californians of their rights under GIPA[1] to choose who controls their genetic information. Debtors could have complied with GIPA by simply asking these Californians for permission and persuading them that the sale of their most sensitive personal information was in their interest. Debtors instead chose a path that trampled GIPA's consumer-consent rights. Sale Proponents[2] tout this as a "great success," UCC Br. at 1, yet desperately seek to evade appellate review of it. *Contra, e.g.*, *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34 (2014) ("final" bankruptcy-court orders are "subject to appellate review by the district court"); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986) ("Appellate review plays a central role in assuring the accuracy of decisions.").

Of course, this "great success" came at great cost to California consumers. Sale Proponents say that complying with GIPA's consumer-consent requirements would have resulted in less value to creditors (and even shareholders). Thus, rather than accept a reduced sale price, Debtors improperly used bankruptcy to monetize the evasion of GIPA. *See, e.g.*, *In re White Crane Trading Co., Inc.*, 170 B.R. 694, 702 n.14 (Bankr. E.D. Cal. 1994) ("Complying with consumer protection laws is not costless and, even though it is difficult to quantify, it constitutes an economic cost that applies to each [bankruptcy] sale . . . .").

Sale Proponents' oppositions are notable for what they refuse to discuss and

---

[1] Capitalized terms not defined in this brief have the same meaning as in the People's opening appellate brief. Dkt 80.

[2] "Sale Proponents" collectively refers to Debtors, TTAM, and the Official Committee of Unsecured Creditors ("UCC"), all of which filed opposition briefs. Dkts 92, 93, 94.

thus concede. *See, e.g.*, *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985) ("A party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue.").

Sale Proponents say that the People lack standing to appeal. However, they all ignore the People's reliance on Supreme Court authority confirming that "[i]nterested parties may file an objection to [a § 363] sale . . . , and may appeal if the court authorizes a sale . . . over their objection." *MOAC Mall Holdings v. Transform Holdco*, 598 U.S. 288, 291 (2023). The People are a creditor, objected below, and thus have standing to appeal. Contrary arguments are frivolous.

Sale Proponents say that this appeal is statutorily moot under § 363(m). But again, all ignore blackletter law, confirmed by the leading bankruptcy treatise: "Of course, if the appeal challenges the good faith finding itself, the appeal is not statutorily moot, because if the good faith finding is reversed, section 363(m) will not prevent an order affecting the validity of the sale." 3 Collier on Bankruptcy ¶ 363.11 (16th ed.). The People properly challenge good faith—thus, this appeal cannot be moot. Contrary arguments are frivolous.

As to good faith, Sale Proponents all concede that NewCo did not exist at the time the bankruptcy court determined that NewCo was a good-faith purchaser. This means that the bankruptcy court necessarily could not have reviewed NewCo's conduct during the sale, a prerequisite to good faith. And they all further concede that TTAM was on actual notice prior to the sale that "wrongful" possession of Californians' genetic data and biological samples could expose TTAM to separate duties, obligations, and liabilities under California law,

including constructive-trust theories. These concessions are fatal to good faith.

Critically, Sale Proponents concede that the challenged bankruptcy sale can readily be unwound. While they posit—without evidence or citation—that this would be a "disastrous" outcome, UCC Br. at 13, they all accept that bankruptcy sales must comply with state-law transfer restrictions, consistent with *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987).

At bottom, the People have standing, this appeal is not moot, and there is no impediment—legal, practical, or otherwise—to the relief sought. For the reasons discussed in this and the People's opening brief, the sale order should be reversed.[3]

## I.   THE PEOPLE HAVE STANDING TO APPEAL

Sale Proponents advance a remarkable argument that the People—represented by California's chief law officer, Cal. Const. art. V, § 13, and a creditor in this bankruptcy case (as even scheduled by Debtors, ER 536)[4]—lack standing to appeal an unlawful sale of substantially all of Debtors' assets. Debtors Br. at 8–9; TTAM Br. at 5–8; UCC Br. at 6–9. Nothing relied on by Sale Proponents supports this remarkable proposition, for good reason.

For their part, Sale Proponents each ignore the Supreme Court's crystal-clear

---

[3] Sale Proponents chide the People for "recycle[ing]" arguments raised below, *e.g.*, Debtors Br. at 1, 13; UCC Br. at 14, but that is how appeals work. *See, e.g.*, *Hartman v. Workman*, 476 F.3d 633, 635 (8th Cir. 2007) ("Ordinarily, we will not consider an argument raised for the first time on appeal.")

[4] TTAM curiously calls the People's creditor status a "late-breaking pivot," TTAM Br. at 6, but even apart from being scheduled by Debtors as a creditor, the People highlighted this months ago in their objection to the sale. ER 759 at n.1 ("The People are . . . a creditor in this bankruptcy proceeding. Among other things, the People hold claims against Debtors for unliquidated amounts . . . for prepetition misconduct, including in connection with a massive October 2023 data breach.").

guidance cited by the People: "Interested parties may file an objection to [a § 363] sale . . . , and may appeal if the court authorizes a sale . . . over their objection." *MOAC Mall Holdings*, 598 U.S. at 291. Instead, each focuses on inapposite, lower-court decisions to argue that the People are somehow "not adversely affected" or a "person aggrieved" by the sale order. These cases are readily distinguishable.

No case cited by Sale Proponents involves a creditor objecting to a bankruptcy sale, which is no surprise given *MOAC Mall Holdings* and other cases that Sale Proponents sidestep. *See, e.g.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988) ("As a general rule, creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditors' ability to receive payment of their claims.").

Instead, Debtors and TTAM rely on *In re Peoples*, 764 F.3d 817 (8th Cir. 2014), and *In re Patriot Co.*, 303 B.R. 811 (B.A.P. 8th Cir. 2004). But both cases denied standing to individuals challenging bankruptcy-court settlements where neither were creditors. These cases are irrelevant. TTAM also relies on *In re Highland Cap. Mgmt., L.P.*, 74 F.4th 361, 367 (5th Cir. 2023), but that case unremarkably found that a non-creditor defendant in a pending adversary proceeding lacked standing to appeal a professional-fee payout. Similarly, TTAM relies on *In re Ashford Hotels, Ltd.*, 235 B.R. 734, 738 (S.D.N.Y. 1999), but that case involved a challenge to a litigation-funding agreement, where "the district court never accepted the appellants' attempts to characterize themselves as creditors." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 90 (2d Cir. 2011) (distinguishing *Ashford Hotels*). Finally, the UCC relies on three different cases—but again, none

involves creditors or sale orders. *Opportunity Fin., LLC v. Kelley*, 822 F.3d 451 (8th Cir. 2016) (defendants in separate avoidance actions, who did not file proofs of claim, challenging consolidation orders); *In re Wigley*, 886 F.3d 681 (8th Cir. 2018) (non-debtor wife appealing denial of husband's bankruptcy plan); *In re Levitt*, 632 B.R. 527 (B.A.P. 8th Cir. 2021) (individual chapter 7 debtors challenging trustee fee application). At bottom, Sale Proponents cannot identify a single case that supports their remarkable argument that a creditor is "not adversely affected" or a "person aggrieved" by a § 363 sale order.

Most charitably, Sale Proponents seem to divine that no alternative sale process could net more proceeds (again, without evidence or citation), and therefore the People cannot complain about the sale—even if the sale violated state law and the bankruptcy code.[5] Debtors Br. at 8; UCC Br. at 9. But accounting exercises like this have been rejected: "[N]one of our . . . standing decisions . . . involving creditors . . . have turned on estimations of valuation, or on whether a creditor was in the money or out of the money. We have never demanded more to accord a creditor standing than that it has a valid and impaired claim." *In re DBSD N. Am., Inc.*, 634 F.3d at 90. Try as they might, Sale Proponents cannot escape the

---

[5] And even if Sale Proponents were correct—which they are not—"[t]he Supreme Court has held that a *public* interest may also give a sufficient stake in the outcome of a bankruptcy case to confer appellate standing." *In re Revco D.S., Inc.*, 898 F.2d 498, 499 (6th Cir. 1990) (citing cases); *In re Zarnel*, 619 F.3d 156 (2d Cir. 2010) (same); *see also Gillis v. California*, 293 U.S. 62, 67 (1934) (successful appeal by California of adverse 28 U.S.C. § 959 order). The People here advance sovereign interests in the enforcement of California's legal code (i.e., GIPA) and quasi-sovereign interests in the protection of California residents. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982). This provides a further, independent basis for standing.

simple fact that creditors, like the People here, have standing to object to and appeal adverse sale orders, as confirmed by the Supreme Court. *MOAC Mall Holdings*, 598 U.S. at 291.

Left with nothing else, Sale Proponents each argue that a permissive intervention rule, Bankruptcy Rule 2018(b)—indisputably never invoked here— nonetheless somehow "bars" the People's appeal. *E.g.*, TTAM Br. at 6. Sale Proponents appear to urge that Bankruptcy Rule 2018(b) is the only basis by which an Attorney General may ever participate in a bankruptcy case, regardless of creditor status. This is preposterous and would call into question the Attorney General's successful participation in countless bankruptcy appeals going back decades. *See, e.g.*, *In re Purdue Pharma, L.P.*, 635 B.R. 26, 38 (S.D.N.Y. 2021) ("The Appellants in this case are the U.S. Trustee William K. Harrington; the States of California . . . ."). In any event, as discussed, the People had no occasion to invoke Bankruptcy Rule 2018(b) here, and thus any appellate limitation imposed by that rule is categorically irrelevant. The People have standing to appeal.

## II. THIS APPEAL IS NOT MOOT

Sale Proponents again ignore blackletter law. Because the People objected to the bankruptcy court's good-faith determination and challenge that determination on appeal, this appeal cannot be moot—"the district court is required to review the bankruptcy court's finding of good faith . . . ." *In re Tempo Tech. Corp.*, 202 B.R. 363, 367 (D. Del. 1996) (emphasis added); *see also, e.g.*, *In re Stanford*, 17 F.4th 116, 123–24 (11th Cir. 2021) ("[A]ppellate courts can assess whether a buyer acted in good faith as part of its inquiry into whether Section 363(m) moots an appeal.");

*In re Gucci*, 126 F.3d 380, 387 (2d Cir. 1997) ("[T]he only question before us is whether the buyer . . . is a good faith purchaser under § 363(m)."); *In re Sax*, 796 F.2d 994, 997 n.4 (7th Cir. 1986) ("As indicated in § 363(m), a stay is not required to challenge a sale on the grounds that an entity did not purchase in good faith . . . ."); *Willemain v. Kivitz*, 764 F.2d 1019, 1024 (4th Cir. 1985) (same); *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983) (same). And as discussed, the leading bankruptcy treatise concurs: "Of course, if the appeal challenges the good faith finding itself, the appeal is not statutorily moot, because if the good faith finding is reversed, section 363(m) will not prevent an order affecting the validity of the sale." 3 Collier on Bankruptcy ¶ 363.11 (16th ed.). Accordingly, this appeal is not moot.[6]

## III. NEITHER NEWCO NOR TTAM PURCHASED IN GOOD FAITH

Sale Proponents grossly misconstrue their burden on appeal. Despite their urging, the People are not "required to demonstrate" bad faith. UCC Br. at 10–11. Rather, "[t]he burden of proof to show good faith is on the proponent of good faith, usually the party seeking dismissal of the appeal; it may not be assumed." 3 Collier on Bankruptcy ¶ 363.11 (16th ed.); *accord, e.g.*, *In re M Capital Corp.*, 290 B.R. 743, 747 (B.A.P. 9th Cir. 2003) ("[T]he proponent of section 363(m) good faith has the burden of proof. This allocation of the burden matters . . . because an inference of good faith drawn from a trial court record that is silent on the question

---

[6] The UCC's mootness argument based on GIPA remedies is both misguided and irrelevant. UCC Br. at 12–13. Reversal of sale orders is specifically authorized under § 363. *See, e.g.*, *MOAC Mall Holdings*, 598 U.S. at 299 ("§ 363(m) plainly contemplates that appellate courts might reverse or modify *any* covered authorization") (cleaned up).

would amount to inverting the burden of proof."); *In re Borders Grp., Inc.*, 453 B.R. 477, 484 (Bankr. S.D.N.Y. 2011) ("The proponent of good faith carries the burden to show good faith."). Sale Proponents have not and cannot meet their burden.

"The first requirement of having a purchaser in good faith is to have a purchaser." *In re R.B.B., Inc.*, 211 F.3d 475, 478 (9th Cir. 2000). It is undisputed that NewCo did not exist at the time the bankruptcy court determined that NewCo was a good-faith purchaser—"NewCo" was simply a placeholder name for a Delaware entity that Debtors planned to form. This alone is fatal to any notion that NewCo is entitled to a good-faith determination.

Critically, because NewCo did not exist, it would have been <u>impossible</u> for the bankruptcy court to have made any findings based on a review of NewCo's conduct, as required to determine good faith. *See, e.g.*, *In re Gucci*, 126 F.3d at 390 ("Good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings; where there is a lack of such integrity, a good faith finding may not be made."). This means that the bankruptcy court's findings about NewCo were necessarily without evidentiary support and thus clearly erroneous. *See, e.g.*, *In re Jencks*, 671 B.R. 252, 259 (B.A.P. 8th Cir. 2025) ("[W]ith no evidence in the record supporting this finding, [it wa]s clearly erroneous."). For example, because NewCo did not exist, the bankruptcy court not possibly have had any record evidence to find that "[t]he consideration provided by [NewCo] for the sale . . . was negotiated at arm's length . . . ." ER 2134. And even if NewCo had existed—which it did not—NewCo could never have purchased at arms' length

because Debtors' structuring of the sale barred NewCo from taking "any corporate action" without Debtors' "consent." ER 2289. An arm's-length transaction necessarily involves "unrelated parties, each acting in his or her own best interest," *In re U.S. Med., Inc.*, 531 F.3d 1272, 1277 n.4 (10th Cir. 2008), which was foreclosed here by the very terms of the sale itself.

Accordingly, as Sale Proponents urge, any determination that NewCo purchased in good faith strikes "as wrong with the force of a five-week-old, unrefrigerated dead fish." Debtors Br. at 9 (quoting *In re Papio Keno Club, Inc.*, 262 F.3d 725, 729 (8th Cir. 2001)).

Realizing that NewCo was unworthy of a good-faith determination on its own, the bankruptcy court instead imputed good faith to NewCo based on TTAM's supposed good faith. ER 2113. This was plain legal error as set forth in the People's opening brief. Op. Br. at 8–10 (citing authorities). Indeed, Sale Proponents concede legal error by making no attempt to support the bankruptcy court's "imputation" rationale. Instead, Sale Proponents fault the People for failing to demonstrate bad faith—which, as discussed, is not the People's burden. Sale Proponents also quibble that insiders, not just third parties, are entitled to good faith. Eight Circuit law is clear that good faith applies only to "third parties," *see, e.g.*, *In re Trism, Inc.*, 328 F.3d 1003, 1006 (8th Cir. 2003); *In re Rodriquez*, 258 F.3d 757, 759 (8th Cir. 2001)[7]—authorities that Sale Proponents all but ignore in a

---

[7] *See also, e.g.*, *Humphrey v. Christopher*, 146 F.4th 682, 687 (8th Cir. 2025) (§ 363(m) protects "third-party purchasers"); *In re Paulson*, 276 F.3d 389, 392 (8th Cir. 2002) (§ 363(m) protects "bona fide third-party purchaser[s]"); *In re Wintz Companies*, 219 F.3d 807, 811 (8th Cir. 2000) (same).

single footnote. Debtors Br. at 11 n.4. Regardless, NewCo is barred from good faith for the reasons discussed—most fundamentally, it did not exist and was barred by the terms of the sale from negotiating at arm's length.

As for TTAM's good faith, Sale Proponents readily concede that the sale was restructured at the last minute specifically to evade state-law transfer restrictions. TTAM Br. at 12, Debtors Br. at 11, UCC Br. at 12. They insist, however, that this actually evinces good faith because their gambit may have resolved some states' objections. But it obviously did not resolve them all, including the People's, which is entirely consistent with our federal system of government where the states' historic police powers extend to consumer protection. *See, e.g.*, *California v. ARC Am. Corp.*, 490 U.S. 93, 101 (1989). 23andMe was headquartered in California, and California has by far the largest number of consumers affected by the sale. No matter how the laws of other states may operate, the last-minute sale restructuring did not work to evade California law.

Sale Proponents further concede—as they must—that TTAM was on actual notice that "wrongful" possession of Californian's genetic data and biological samples would expose TTAM to duties and obligations under state-law constructive-trust theories, Cal. Civ. Code §§ 2223, 2224. *See, e.g.*, ER 946; ER 759; Dkt 25. This too directly undercuts TTAM's status as a good-faith purchaser. *See, e.g.*, *In re TMT Procurement Corp.*, 764 F.3d 512, 522 (5th Cir. 2014). Sale Proponents counter that "knowledge that there are objections to the transaction" is insufficient. Debtors Br. at 13. But this misconstrues the People's argument. *See, e.g.*, *In re TMT Procurement Corp.*, 764 F.3d at 522 ("There is a

difference . . . between simply having knowledge that there are objections to the transaction and having knowledge of an adverse claim."). The "adverse claim" was not the People's sale objection, but rather TTAM's potential, independent exposure under California law for "wrongful" possession of consumers' genetic data. Accordingly, TTAM could not have purchased in good faith; any contrary determination was clearly erroneous. *See, e.g.*, *In re Papio Keno Club, Inc.*, 262 F.3d at 729.

Finally, only TTAM suggests that the People may have waived their challenge to TTAM's good faith. TTAM Br. at 14. No one argues waiver as to NewCo. It is undisputed that that People objected to good faith below, which is enough to preserve the issue on appeal. *See, e.g.*, *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 174 (1988) ("[W]e are satisfied that [appellant] substantially satisfied the requirement of putting the court on notice as to his concern."). And even if it were not—which it is—NewCo's lack of good faith is alone sufficient for this Court to review the validity of the sale order and reverse it. *See, e.g.*, *MOAC Mall Holdings*, 598 U.S. at 299 (where purchaser lacks good faith, "§ 363(m)'s constraints are simply inapplicable").

## IV.  THE SALE ORDER VIOLATED THE BANKRUPTCY CODE

### A.    The Sale Order Is Not Authorized Under § 363

11 U.S.C. § 363(b) authorizes a debtor to use or sell estate property outside of the ordinary course of business with court approval. The sale order indisputably went well beyond that. It authorized (1) Debtors to create NewCo and issue ownership interests in NewCo; (2) Debtors to transfer assets and liabilities between

11

themselves; (3) Debtors to sell assets to NewCo and for NewCo to pay with a $300 million promissory note; and (5) Debtors to sell NewCo to TTAM under § 363, with immediate cancellation of the promissory note. For their part, Sale Proponents decline to identify any section of the bankruptcy code—beyond § 363—that authorized this complex, multi-step corporate transaction, *see* Debtors Br. at 15.

As argued in the People's opening brief, § 363 cannot bear the weight Sale Proponents (and the bankruptcy court) place on it. To be sure, the bankruptcy code may expressly authorize certain aspects of the complex sale as part of a chapter 11 plan.[8] But the Supreme Court is clear: Plan authority cannot be imported into other code provisions, like § 363, thus allowing a debtor to bypass the procedural safeguards of chapter 11. *See, e.g.*, *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 222 (2024); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 471 (2017); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 207 (1988).[9]

Sale Proponents are left arguing that the People must point to a bankruptcy-code provision or something else that prohibits the sale. Debtors Br. at 15; UCC Br. at 15. But this gets things backwards. "[M]ore than simple statutory silence" would be expected if "Congress were to intend a major departure," by allowing

---

[8] *E.g.*, 11 U.S.C. §§ 1123(a)(5)(B) ("transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan"); 1123(a)(5)(C) ("merger or consolidation of the debtor with one or more persons"), 1123(a)(5)(F) ("cancellation or modification of any indenture or similar instrument"), 1123(a)(5)(J) ("issuance of securities of the debtor"). To be clear, the People do not concede—and have never conceded—that the sale could be accomplished through a chapter 11 plan. *Contra* UCC Br. at 15

[9] The UCC attempts to confine these cases to the absolute-priority rule, UCC Br. at 15, but they are not so limited. *See, e.g.*, *Harrington*, 603 U.S. at 222 n.5; *Law v. Siegel*, 471 U.S. 415, 427 (2014); *Schwab v. Reilly*, 560 U.S. 770, 791–92 (2010).

§ 363 sales to evade chapter 11's procedural safeguards. *Czyzewski*, 580 U.S. at 465; *see also, e.g.*, *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983) (prohibiting attempt to "short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan sub rosa in connection with a sale of assets"); *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) (reversing bankruptcy court's approval of asset sale after holding that § 363 does not "gran[t] the bankruptcy judge *carte blanche*" or "swallo[w] up Chapter 11's safeguards"). It is Sale Proponents that must identify authority beyond § 363, which they fail to do. The sale order must be reversed.

## B.   The Sale Order Does Not Comply With GIPA

Sale Proponents agree that bankruptcy sales under § 363 must comply with state-law transfer restrictions, like GIPA. *See, e.g.*, *In re Schauer*. 835 F.2d at 1225. The only question is whether the sale order unlawfully evaded GIPA. It did.

As discussed, GIPA prohibits genetic-testing companies from transferring or disclosing California consumers' genetic data and biological samples to a "third party" without affected consumers' consent. Cal. Civ. Code § 56.181(a)(2)(D). GIPA is unambiguous. It has just two exceptions: "service providers" and certain "educational institutions." Cal. Civ. Code § 56.181(a)(2)(D) & (F). Both exceptions are express, and neither is relevant here. Corporate affiliates and subsidiaries, like NewCo, are third parties under GIPA's plain language. There is no exception for them.[10]

---

[10] The UCC curiously argues that "it would be absurd to read GIPA as precluding a company from disclosing its own information to its own employees

Despite GIPA's plain language, the bankruptcy court erroneously held that GIPA has an "implicit" exception for affiliates and subsidiaries. ER 2103–2106. For this, the court relied on a single "report and recommendation" out of Texas that has nothing to do with GIPA, *In re Wesco Aircraft Holdings, Inc.*, No. 23-03091, 2025 WL 354858 (Bankr. S.D. Tex. Jan. 15, 2025). Sale Proponents double down on this irrelevant report and recommendation, Debtors Br. at 13–14, even though the U.S. District Court for the Southern District of Texas recently declined to adopt it. *See Wesco Aircraft Holdings, Inc. v SSD Inv. Ltd.*, No. 25-00202 (S.D. Tex. Jan. 16, 2025) (minute entry following Sept. 11, 2025 status conference). Sale Proponents now also point to another unpublished decision from outside California that similarly has nothing to do with GIPA, *Crown Cork & Seal Co. v. Cont'l Holdings, Inc.*, No. 93-06563, 1995 WL 395791 (E.D. Pa. June 30, 1995). This case pre-dates GIPA's enactment by more than 25 years and, like *Wesco Aircraft*, interprets a term in a private contract that has no bearing on California law.

There can be no serious dispute that the entire point of the sale was to transfer the genetic information of millions of consumers to TTAM. This has been the stated goal of Sale Proponents from the beginning, and the last-minute restructuring of the sale did not change that. *See, e.g.*, ER 1331 ("The detailed steps required to implement this equity sale structure are described below, but the

---

because such employees have a separate identity." UCC Br. at 14–15. There is no "absurdity." Rather, the UCC misapprehends elementary California corporate law: "Because a corporation is a legal fiction that cannot act except through its employees or agents, a corporation and its employees generally function as a single legal unit and are the same legal 'person' . . . ." *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1392 (2001).

net result is that the Debtors will bring about the same result . . . using a different transactional form."); ER 1539–1540 at 75:19–76:5 ("And so pro forma for the sale, what's happening? TTAM is paying an aggregate purchase price of 302.5 million to the estates . . . . And then but at the end of the day, which is step four, you get to the exact same place. The debtors are left with 302.5-million dollars. TTAM has the acquired assets. Has received through this change of ownership.").

Likewise, TTAM has been singularly focused on obtaining this genetic data and does not hide it. *See, e.g.*, ER 1617 at 152:6–7, *id.* at 152:8–10 (includes California consumers' biological samples and genetic data), *id.* at 152:11–13 (still purchasing "All of that"); ER 1657 at 192:4–6 ("my assumption has always been it was the whole company, the data").

Despite Debtors' best efforts and last-minute restructuring to "exalt artifice above reality and to deprive [state law] of all serious purpose," *Gregory v. Helvering*, 293 U.S. 465, 470 (1935), the sale order still ran headlong into GIPA and violated the bankruptcy code.

## V.  CONCLUSION

The sale order should be reversed.

/ / /

Dated: October 20, 2025          Respectfully submitted,

Rob Bonta
Attorney General
Nicklas A. Akers #211222 (CA)
Senior Assistant Attorney General

/s/ Bernard A. Eskandari
Bernard A. Eskandari #244395(CA)
Stacey D. Schesser #245735(CA)
Supervising Deputy Attorneys General
Yen P. Nguyen #239095(CA)
Daniel M.B. Nadal #299661(CA)
Deputy Attorneys General

*Attorneys for Creditor the People of the State of California*

CALIFORNIA DEPARTMENT OF JUSTICE
455 Golden Gate Ave., Ste. 11000
San Francisco, California 94102
Telephone:  (213) 269-6348
Facsimile:  (916) 731-2146
Email:          bernard.eskandari@doj.ca.gov
                    stacey.schesser@doj.ca.gov
                    titi.nguyen@doj.ca.gov
                    daniel.nadal@doj.ca.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the page-length requirements in the Court's Case Management Order (paragraph 6) because the brief does not exceed 15 pages. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using "Microsoft® Word for Microsoft 365 MSO (Version 2408 Build 16.0.17928.20336) 64-bit" in 14-point Times New Roman font, set at 28-point line spacing for text.

/s/ Bernard A. Eskandari
An Attorney for the People of the State of California

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document will be filed with the Clerk of the United States District Court for the Eastern District of Missouri and will be served on the parties registered to receive electronic notice via the Court's CM/ECF System.

/s/ Bernard A. Eskandari
An Attorney for the People of the State of California